Ronald G. SANDISON and Craig
M. Stanley, Plaintiffs,

v.

MICHIGAN HIGH SCHOOL ATHLETIC
ASSOCIATION, INC., a non-profit Michigan Corporation, the Rochester Community Schools, and the Grosse Pointe
Public School System, Defendants.

No. 94–CV–73231.

United States District Court,
E.D. Michigan,
Southern Division.

Sept. 13, 1994.

Richard J. Landau, Dykema Gossett, Ann Arbor, MI, for plaintiff.

Edmund J. Sikorski, Jr., Muraski & Sikorski, Ann Arbor, MI, for Mich. High School Athletic.

Douglas H. West, Hill Lewis, Detroit, MI, for Grosse Pte. Public Schools.

Richard E. Kroopnick, Hardy, Lewis, Pollard & Page, Birmingham, MI, for Rochester Community Schools.

### OPINION AND ORDER

FEIKENS, District Judge.

### I. BACKGROUND

On August 25, 1994, after receiving evidence and hearing oral argument, I granted plaintiffs' request for a temporary restraining order permitting them to participate in cross-country races at their respective high schools. I found that plaintiffs were entitled to immediate relief because plaintiff Ronald Sandison was scheduled to participate in a cross-country race on the hearing date and plaintiff Craig Stanley was scheduled to participate in a race within 10 days after the hearing date. This Opinion and Order is in response to Plaintiffs' Motion for Preliminary Injunction.[1] This case arises out of plaintiffs' claim that defendant, the Michigan High School Athletic Association ("MHSAA"),[2] has violated the Americans With Disabilities Act, 42 U.S.C.A. §§ 12101–12213 ("ADA"), Section 504 of the Rehabilitation Act of 1973, 29 U.S.C.A. § 794 ("Section 504" or "Rehabilitation Act"),[3] 42 U.S.C.A. § 1983 and the Michigan Handicappers' Civil Rights Act, M.C.L.A. §§ 37.1101–1607 ("MHCRA"), by its refusal to allow plaintiffs to participate in interscholastic athletics in the 1994–1995 school year. Under MHSAA Regulation I § 2, plaintiffs are ineligible to participate in any athletic sport at their respective high schools because they are nineteen years old.

As set forth in the findings of facts and conclusions of law, pursuant to Fed.R.Civ.P. 52(a), I conclude that: (1) plaintiffs have shown a probability of success on the merits; (2) plaintiffs will suffer irreparable harm if they are not permitted to participate on the cross-country and track teams at their re-

---

1. Evidence was received and oral argument heard on plaintiffs' motion on September 6, 1994.

2. Plaintiffs also name Rochester Community Schools and the Grosse Pointe Public School System. Plaintiffs acknowledge that the school districts are not adverse to plaintiffs' request for relief but have named them in order to permit this court to protect the districts from the imposition of penalties by the MHSAA. (Pls.' Compl. at 4.) Thus this opinion focuses on the conduct of the MHSAA.

3. The ADA and Section 504 are collectively referred to as the "Acts" throughout this opinion.

spective high schools; (3) the harm to plaintiffs, if the preliminary injunction is not granted, would outweigh any injury that defendant would suffer by the imposition of the injunction; and (4) the public interest would be best served by the issuance of the preliminary injunction. Plaintiffs' Motion for Preliminary Injunction is GRANTED.

## II. *FINDINGS OF FACT*

Plaintiffs, Ronald G. Sandison ("Sandison") and Craig M. Stanley ("Stanley") are both nineteen years old. Sandison is a senior at Adams High School ("Adams"), part of the Rochester Community School District, and participated on the cross-country and track teams during his freshman, sophomore, and junior years at Adams. Stanley is a senior at Grosse Pointe North High School ("GPN"), part of the Grosse Pointe Public School System, and he also participated on the cross-country and track teams during his freshman, sophomore, and junior years at GPN. Both students wish to continue their participation on the cross-country and track teams at their respective schools during their senior years but are prohibited from competing under MHSAA Regulation I § 2 which provides:

### SECTION 2—AGE

A student who competes in any interscholastic athletic contests must be under nineteen (19) years of age, except that a student whose nineteenth (19th) birthday occurs on or after September 1 of a current school year is eligible for the balance of that school year. Any student born before September 1, 1975, is ineligible for interscholastic athletics in Michigan.

(MHSAA Handbook 1994–95 at 29.) Because both plaintiffs were nineteen years old before September 1 of the current school year, and because both plaintiffs were born prior to September 1, 1975,[4] they are ineligi-

ble to participate on the cross-country and track teams at their respective schools. Although MHSAA has procedures in place for the waiver of most eligibility requirements, there are no such procedures for the age requirement. (MHSAA Handbook 1994–95 at 20.)

Though there is some evidence that both plaintiffs receive some form of special education support in high school, the learning disability which triggers their case was discovered when they were both held back in grade promotion during grade school. Sandison was previously diagnosed as suffering from an auditory import disability which caused him to have difficulty speaking, reading, and writing. (Test. of Janet Sandison, Sept. 6, 1994.) His disability became apparent when he was three and this caused him to spend a significant number of years in an ungraded classroom.[5] At the age of seven, Sandison was still in kindergarten. *Id.* Subsequent to completion of kindergarten, Sandison was placed in graded classrooms in which he continued to receive special education support. Because his early education was delayed due to his learning disability, Sandison is two years behind his age group.

Stanley was previously diagnosed as having a learning disability in mathematics. His disability was diagnosed while he was at the kindergarten level. (Test. of Michael Sandison, Sept. 6, 1994.) Similar to Sandison, Stanley repeated kindergarten and subsequently spent a number of years in an ungraded classroom. By the time Stanley entered a graded classroom, he was also two years behind his age group.

Defendants, Rochester Community Schools and the Grosse Pointe Public School System, are public school districts within the state school system. Both school districts receive federal financial assistance[6] and both districts are members of the MHSAA.

---

4. Sandison was born on May 10, 1975; Stanley was born on May 29, 1975. (Pls.' Compl. at 2.)

5. At age four and one half years, he was placed in pre-primary for the impaired, a classroom for children who show a significant learning impairment. He stayed in pre-primary until he was six, at which time he entered an ungraded kindergar-

ten with special education support. (Test. of Janet Sandison, Sept. 6, 1994.)

6. Such funding includes grants pursuant to the Individuals with Disabilities Education Act, 20 U.S.C.A. §§ 1400–1485.

MHSAA is technically a private non-profit corporation. However, its creation, existence, and authority as an athletic association are mandated by the Michigan legislature. M.C.L.A. § 380.1289(2) (West 1988). *See also Berschback v. Grosse Pointe Public Sch. Dist.*, 154 Mich.App. 102, 111, 397 N.W.2d 234 (1986) (MHSAA eligibility rules involve state action for purposes of the Fourteenth Amendment). The statute provides:

> An association established for the purpose of organizing and conducting athletic events, contests, or tournaments among schools *shall be the official association of the state.* The association shall be responsible for the adoption and enforcement of regulations relative to eligibility of pupils in schools for participation in interscholastic athletic events, contests, or tournaments.

(Emphasis added.) MHSAA's stated purposes are: to promote the educational value of interscholastic athletic programs throughout the state; to assist schools in their regulation of interscholastic athletic eligibility and competition; to promote uniformity, predictability and competitive equity in the application of eligibility rules for athletic contests; and to promote the physical welfare of participating students. (MHSAA Handbook 1994–95 at 13.) To effectuate these goals, MHSAA promulgates rules governing interscholastic sports and invites school boards to become members.

To join the MHSAA, individual school boards must adopt and adhere to its rules and regulations or face various sanctions. The statutory provision which authorizes board membership states:

> A board may join an organization created pursuant to section [380.]1289 which has as its object the promotion of sport and the adoption of rules for the conduct of athletic contests between students. *The association is the official association of the state for the purpose of organizing and conducting athletic events, contests, and tournaments among schools. The association*

*shall be responsible for the adoption and enforcement of regulations relative to eligibility of athletes in schools for participation in interscholastic athletic events, contests, and tournaments.*

M.C.L.A. § 380.1521 (West 1988). (Emphasis added.) Virtually every public school and private secondary school in the State of Michigan is a member of MHSAA.[7]

### III. *SUBJECT MATTER JURISDICTION*

Plaintiffs argue that MHSAA is a private entity which provides or operates a public accommodation under Title III of the ADA, or, alternatively, is a public entity under Title II of the ADA. MHSAA argues that this court does not have jurisdiction because it is neither a private entity operating or providing a public accommodation nor a public entity and plaintiffs therefore have no right of action under the ADA. As a basis for their claim under section 504, plaintiffs argue that MHSAA receives federal financial assistance. MHSAA counters that it does not receive any federal assistance and is therefore not subject to the jurisdiction of this court under section 504.

I conclude as I did in granting the temporary restraining order,[8] that there is a basis for jurisdiction under the ADA and section 504; MHSAA is a private entity operating a public accommodation and a public entity; and MHSAA is an indirect recipient of federal financial assistance. Thus, this court has subject matter jurisdiction under 28 U.S.C.A. § 1331.

█ A public accommodation is a private entity which affects commerce through the operation of "a concert hall, stadium, or other place of exhibition or *entertainment;* a nursery, elementary, secondary, ... school, or other *place of education.*" 42 U.S.C.A. § 12181 (West 1994). By its own admission, through the management of interscholastic athletic activities and competition at virtually every public and private secondary school throughout the state, defendant operates a

---

**7.** There were 704 member senior high schools in the MHSAA during 1993–94. There were more than 249,000 participants on the athletic teams in Michigan high schools. (MHSAA Handbook 1994–95 at 13.)

**8.** Temporary Restraining Order, August 25, 1994.

place of education. One of its stated purposes is to "increase and promote the *educational value* of interscholastic programs throughout the state." (MHSAA Handbook 1994–95 at 13.) (Emphasis added.) Additionally, defendant sponsors interscholastic athletic competitions and tournaments which are open to the general public as well as students. MHSAA is the sole recipient of gate proceeds at all interscholastic sporting events. Thus MHSAA also operates a place of entertainment for purposes of the ADA.

A public entity includes any department, agency, or other instrumentality of a state or local government. 42 U.S.C.A. § 12131 (West 1994). MHSAA's creation, existence, and authority are mandated by state statute. M.C.L.A. § 380.1289. The statute specifically asserts that MHSAA "is the *official association of the state.*" *Id.* (Emphasis added.) The statutory provision authorizing board membership makes a similar assertion, "*the association is the official association of the state for the purpose of organizing and conducting athletic events, contests, and tournaments among schools.*" M.C.L.A. § 380.1521. (Emphasis added.) The state has decided to permit MHSAA to carry out a state function, the organization, management, and regulation of interscholastic athletic events at public and private schools throughout the state. MHSAA is clearly an agency or other instrumentality of the state.

■ Although MHSAA is not a direct recipient of federal funding, it is subject to the Rehabilitation Act because it receives federal funds indirectly. *See Jacobson v. Delta Airlines, Inc.*, 742 F.2d 1202, 1212 (9th Cir.1984) (defendant not beyond the scope of the Reha-

bilitation Act simply because the assistance allegedly received was indirect). The schools and corresponding buildings or facilities in which defendant carries out all of its functions (interscholastic athletic competitions and tournaments) receive federal assistance. The coaches of the teams which participate in the competitions sponsored by defendant are school district employees. Because it is not disputed that each of the districts involved here receives federal financial assistance, defendant is subject to the Rehabilitation Act as an indirect recipient of federal assistance.

## IV. CONCLUSIONS OF LAW

■ In determining whether a preliminary injunction should be issued, the court must consider: (1) whether the movant has shown a strong or substantial likelihood or probability of success on the merits; (2) whether irreparable harm will result without an injunction; (3) whether issuance of a preliminary injunction will result in substantial harm to third parties; and (4) whether the public interest is advanced by the injunction. *International Resources, Inc. v. New York Life Ins. Co.*, 950 F.2d 294, 302 (6th Cir. 1991); *Frisch's Restaurant, Inc. v. Shoney's Inc.*, 759 F.2d 1261, 1263 (6th Cir.1985); *Thomas by and through Thomas v. Davidson Academy*, 846 F.Supp. 611, 616 (M.D.Tenn.1994). These four considerations are factors which must be carefully balanced, not prerequisites which must be met. *In re DeLorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir.1985).

### A. *Probability of success on the merits of plaintiffs' ADA and section 504 claims.*[9]

Under the ADA, it is unlawful for a place of public accommodation [or public entity][10]

---

**9.** Plaintiffs have asserted four causes of action: violation of Titles II and III of the ADA, violation of Section 504 of the Rehabilitation Act, violation of the MHCRA and violation of 42 U.S.C. § 1983. For the purpose of ruling on Plaintiffs' Motion for Preliminary Injunction, I have limited this opinion to the claims for violations of the ADA and Section 504 only. The MHCRA mirrors the federal statute and any conclusions reached in applying the ADA apply equally to the MHCRA claim. Although I have not analyzed plaintiffs' § 1983 claim in this opinion, there is case law support for plaintiffs' claim that § 1983 is also a basis for issuance of a preliminary injunction in

this case. *See Crocker v. Tennessee Secondary School Athletic Association*, 735 F.Supp. 753 (M.D.Tenn.1990) (handicapped student at high school entitled to preliminary injunction on the basis of alleged violation of 42 U.S.C.A. § 1983); *Berschback v. Grosse Pointe Public Sch. Dist.*, 154 Mich.App. 102, 111, 397 N.W.2d 234 (1986) (the adoption and application of athletic eligibility rules by the MHSAA constitute state action for purposes of application of the constitutional right to equal protection of the laws).

**10.** 42 U.S.C.A. § 12132 applies to public entities while § 12182 applies to public accommoda-

to discriminate against an individual on the basis of disability "in the full and equal enjoyment of the ... facilities, privileges, advantages or accommodations of [such] place of public accommodation [or public entity] by any person who owns, leases (or leases to), or operates such place of public accommodation [or public entity]." 42 U.S.C.A. §§ 12182(a) and 12132 (West 1994). The Rehabilitation Act prohibits discrimination under federal grants and programs, providing that "no otherwise qualified individual with a disability ... shall, solely by reason of [such individual's] disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance...." 29 U.S.C.A. § 794 (West 1994).

■ In order to establish a claim under the ADA, plaintiffs must demonstrate a similar set of elements to those they are required to prove under the Rehabilitation Act. *Thomas*, 846 F.Supp. at 617. *See also E.E.O.C. v. AIC Sec. Investigation Ltd.*, 820 F.Supp. 1060, 1064 (N.D.Ill.1993) (applying case law developed under the Rehabilitation Act and corresponding standards to claims arising under the ADA). Plaintiffs must prove: (1) they have a disability; (2) defendant MHSAA is subject to the ADA; and (3) that they were denied the opportunity to participate in or benefit from services or accommodations on the basis of their disabilities; or that defendant has failed to make reasonable accommodation by modifying policies, practices, or procedures, when such modifications are necessary to afford such goods, services and accommodations to individuals with disabilities and defendant has not demonstrated that such modifications would fundamentally alter the nature of such goods, services or accommodations. 42 U.S.C.A. § 12182.

■ To establish a claim under the Rehabilitation Act, plaintiffs must prove that (1) they have disabilities which are recognized under the Act; (2) they are otherwise quali-

fied for participation on the cross-country and track teams at their respective high schools; (3) plaintiffs are being excluded from participation in, being denied the benefits of, or being subjected to discrimination, in the interscholastic athletic program run by MHSAA, solely by reason of their disabilities; and (4) the interscholastic athletic program operated by MHSAA receives federal financial assistance. *Doherty v. Southern College of Optometry*, 862 F.2d 570, 573 (6th Cir.1988); *Hoot by Hoot v. Milan Area Schs.*, 853 F.Supp. 243, 249 (E.D.Mich.1994); *Pottgen v. Missouri State High School Activities Association*, 857 F.Supp. 654, 666 (E.D.Mo.1994).

### 1. *Plaintiffs' learning disabilities are disabilities within the meaning of the ADA and the Rehabilitation Act.*

In the ADA and the Rehabilitation Act, disability is defined as "a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual; a record of an such impairment; or being regarded as having such an impairment." 42 U.S.C.A. § 12102 (West 1994); 29 U.S.C.A. § 706(8). Major life activities include a variety of functions including *learning.* 28 C.F.R. § 35.104; *Thomas*, 846 F.Supp. at 617. The determination of whether a person is substantially limited in a major life activity must be made on a case-by-case basis. 29 C.F.R. § 1630.2(j). A physical or mental impairment refers to "any mental or psychological disorder such as mental retardation, organic brain syndrome, emotional or mental illness, and *specific learning disabilities.*" 28 C.F.R. §§ 35.104 and 36.104. (Emphasis added.) Defendant does not dispute that plaintiffs previously suffered from disabilities which caused them to be delayed by two years in their early education. However, defendant argues that participation in interscholastic sports is not a major life activity as contemplated under the Acts.

Defendant downgrades the importance of interscholastic sports in plaintiffs' learning

tions. The prohibitions of both titles are the same and both are applied to the facts of this

case in ruling on Plaintiffs' Motion for Preliminary Injunction.

programs. Sandison has better grades[11] as a result of his involvement on the cross-country and track teams and attributes his improved performance to his interaction with his cross-country and track teammates who encourage him to study and to be disciplined. (Test. of Ronald Sandison, Sept. 6, 1994.) Stanley has improved social relationships as a result of his participation on the cross-country and track teams. (Test. of Craig Stanley, Sept. 6, 1994.) Because participation on the cross-country and track team is an important and integral part of the education of plaintiffs, it is as to them a major life activity. Thus, plaintiffs' disabilities limit a major life activity as contemplated by ADA and the Rehabilitation Act.

### 2. Plaintiffs are "otherwise qualified" to participate on the cross-country and track teams.

An individual is "otherwise qualified" within the meaning of the Rehabilitation Act if he is able to meet all of a program's necessary requirements in spite of the disability, with reasonable accommodation. *Doherty,* 862 F.2d at 575 (affirming trial court's modification of "otherwise qualified" standard established in *Southeastern Community College v. Davis,* 442 U.S. 397, 406, 99 S.Ct. 2361, 2367, 60 L.Ed.2d 980 (1979)). It is undisputed that plaintiffs are physically and academically qualified to participate on the cross-country and track teams at their respective high schools. Defendant, however, argues plaintiffs are not "otherwise qualified" because they fail to meet the age eligibility requirement.

Although defendant raises a valid point, the inquiry when an individual does not meet the specific requirements of a particular program is whether reasonable accommodation can be made to enable the disabled individual to meet the program's requirements. *Doherty,* 862 F.2d at 575. *See also Alexander v. Choate,* 469 U.S. 287, 301, 105 S.Ct. 712, 720, 83 L.Ed.2d 661 (1985) (the balance struck in *Davis*[12] requires that an otherwise qualified handicapped individual must be provided with meaningful access to the benefit that the grantee offers; to assure meaningful access, reasonable accommodation in the grantee's program or benefit may have to be made); *Sch. Bd. of Nassau County v. Arline,* 480 U.S. 273, 287–88, n. 17, 107 S.Ct. 1123, 1131, n. 17, 94 L.Ed.2d 307 (1987) ("when a handicapped person is not able to perform the essential functions of the job, the court must also consider whether any reasonable accommodation by the employer would enable the handicapped person to perform those functions"); *Hall v. U.S. Postal Service,* 857 F.2d 1073, 1078 (6th Cir.1988) (the inquiry into reasonable accommodation is one aspect of the otherwise qualified analysis under section 504); *Brennan v. Stewart,* 834 F.2d 1248, 1261–62 (5th Cir.1988) (we no longer take literally the assertion of *Davis*[13] that an "otherwise qualified" person is one who is able to meet all of a program's requirements in spite of his handicap; the question after *Alexander*[14] is the rather "mushy" (sic) one of whether some "reasonable accommodation" is available to satisfy the legitimate interests of both the grantee and the handicapped person). For the reasons discussed in 4. below, I conclude that plaintiffs are "otherwise qualified" to participate on the cross-country and track teams at their respective high schools because reasonable accommodation, waiver of the age eligibility requirement, can be made by defendant to enable plaintiffs to meet the eligibility requirements and participate on the cross-country and track teams.

### 3. MHSAA is subject to the requirements of the ADA and the Rehabilitation Act.

As discussed previously in III., *supra,* MHSAA is subject to the requirements of the ADA and the Rehabilitation Act because

11. Sandison has gone from a 2.2 grade point average to a 3.2 during his involvement on the cross-country and track teams. (Test. of Janet Sandison, Sept. 6, 1994.)

12. *Southeastern Community College v. Davis,* 442 U.S. 397, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979).

13. *Id.*

14. *Alexander v. Choate,* 469 U.S. 287, 105 S.Ct. 712, 83 L.Ed.2d 661 (1985).

it is a private entity operating a public accommodation, a public entity, and an indirect recipient of federal financial assistance.

### 4. Plaintiffs are being denied participation on the cross-country and track teams solely by reason of their disabilities and defendant has failed to make reasonable accommodation.

Plaintiffs argue they are being denied the right to compete in interscholastic athletics solely on the basis of their disabilities in violation of the ADA and the Rehabilitation Act. Because their respective learning disabilities required that they be placed in ungraded classrooms for a number of years during their early education, they are both nineteen years of age and ineligible for participation in interscholastic sports under MHSAA regulations. MHSAA argues that plaintiffs are not being denied participation on the basis of their disabilities but rather on the basis of a neutral, uniformly-applied, age standard. Defendant argues plaintiffs are not, therefore, "otherwise qualified," as discussed in 2. *supra,* because they fail to meet an essential eligibility requirement. Similar to the Rehabilitation Act [15] the ADA [16] requires reasonable accommodation be made to enable plaintiffs to meet MHSAA eligibility requirements.

In response to the reasonable accommodation requirement under the ADA and the Rehabilitation Act, defendant argues that no reasonable accommodation can be made because the age requirement serves as an important and essential safeguard in competitive interscholastic sports. According to defendant, the age eligibility requirement safeguards against injury, in the case of over-age and correspondingly over-sized participants, and it prevents any unfair competitive advan-

tage that older and larger participants might provide. Defendant also argues that if it is forced to waive the age eligibility requirement in this case, it will be faced with an administrative burden in that many age eligibility challenges will be made.

It is beyond dispute that the rule promulgated by the MHSAA is necessary. A line must be drawn. Basing that line on age is sound. The conflict between the rule and the ADA and its sister statute, the Rehabilitation Act, points up the need, as is evident in this case, for a resolution of competing interests. The statutes, which have as their purpose the redress of the needs of disabled or handicapped persons, need not destroy the rule which limits on the basis of age, eligibility to participate in high school athletics but the proper outcome must be determined on a case-by-case basis.

Applying defendant's concerns to the facts of this case, reasonable accommodation of plaintiffs' disabilities should be made by waiving the age eligibility requirement. Plaintiffs are over-age because they were held back in grade promotion in their early education as a result of their disabilities. Thus, plaintiffs are ineligible to compete because of a previous disability. However, plaintiffs are attempting to participate in two non-contact sports, cross-country and track. Therefore, the safety concern is not an issue in this case. Additionally, plaintiffs have been described as mid-level competitors by their respective coaches. (Test. of Coaches William Cicciarelli and Patrick Wilson, Sept. 6, 1994.) Thus, although they are not at the bottom of the team roster, they are not the "star" players so as to provide any unfair competitive advantage to their respective teams. With the reasonable accommodation of the age requirement in this case, plaintiffs

---

**15.** See 2., *supra.*

**16.** Under the ADA, discrimination includes:

(i) the *imposition or application of eligibility criteria that screen out or tend to screen out an individual with a disability* ... from fully and equally enjoying any ... facilities, privileges, or advantages, or accommodations, unless such criteria can be shown to be necessary for the provision of the ... facilities, privileges, or advantages, or accommodations being offered;

(ii) *a failure to make reasonable modifications in policies,* practices, or procedures, when such modifications are necessary to afford such ... facilities, privileges, or advantages, or accommodations to individuals with disabilities, *unless* the entity can demonstrate that making such modifications would fundamentally alter the nature of such ... facilities, privileges, or advantages, or accommodation being offered or would result in undue burden 42 U.S.C.A. § 12182(b)(2)(A). (Emphasis added.)

---

---

are otherwise qualified under section 504 of the Rehabilitation Act.

Defendant's argument that it will suffer an undue burden through increased eligibility challenges takes my conclusion too far. The conclusion I reach today is not universal. It is to be applied on a case-by-case basis. The facts of each case will dictate the proper result under the ADA and the Rehabilitation Act. There may be an instance where a disabled individual should be denied participation on the basis of the concerns expressed by defendant, safety and unfair competitive advantage. In that case, when and if it should arise, defendant should respond accordingly after carefully analyzing the situation and balancing the goals of the ADA and the Rehabilitation Act, the rights of handicapped individual and the best interests of the interscholastic sports program.

For the reasons discussed above, I conclude that plaintiffs have shown a probability of success on the merits of their ADA and Rehabilitation Act claims.

### B. Irreparable harm will result if the injunction is not granted.

Plaintiffs will suffer irreparable harm if an injunction is not issued. As a direct result of their participation in interscholastic sports, plaintiffs have shown academic and social improvement despite their disabilities. This is their senior year and such performance is more important now than ever. As discussed above, such participation has become an integral part of plaintiffs' learning and overall performance. If it is not continued, their academic performance may decline. Clearly, plaintiffs will suffer irreparable harm if an injunction is not issued.

### C. Issuance of the injunction will not result in substantial harm to others.

As discussed in A(4), *supra*, there is no risk of harm to others if the injunction is issued. Defendant's concerns of safety, unfair competitive advantage, and increased eligibility challenges are misplaced in this instance. Plaintiffs are involved in non-contact sports; they are not "star" athletes; and there is no indication that there is a significant number of ineligible disabled individuals waiting to challenge the age eligibility requirement.

### D. The Public Interest Is Advanced by the Issuance of the Injunction.

The ADA was enacted on July 26, 1990. In passing the Act, Congress recognized that physical or mental disabilities affect more than 43,000,000 Americans whom society has tended to isolate and segregate because of their disabilities. *Anderson v. Little League Baseball, Inc.*, 794 F.Supp. 342, 344 (D.Ariz. 1992). Disabled individuals experience not only outright intentional exclusion, but also the discriminatory effects of overprotective rules and policies, and the failure to make modification to existing practices. *Id.* The extent of non-participation of individuals with disabilities in social and recreational events is staggering. *Id.*

The purpose of the ADA and the Rehabilitation Act is to include persons with disabilities in society equal to those without disabilities by addressing discrimination against persons with disabilities. 42 U.S.C.A. § 12101 (West 1994). There is significant public interest in eliminating discrimination against individuals with disabilities and such public interest is advanced by issuing an injunction against MHSAA. The injunction would permit plaintiffs to enjoy, to the fullest extent, their high school education experience as do other non-disabled students.

Having balanced these factors, I find that they weigh in favor of granting a preliminary injunction. Plaintiffs have shown a probability of success on the merits; that they will suffer irreparable harm if they are not permitted to participate on the cross-country and track teams at their respective high schools; that the harm to plaintiffs, if the injunction is not granted, would outweigh any injury that defendants would suffer by the imposition of the injunction; and that the public interest is best served by the issuance of the preliminary injunction.

### IV. CONCLUSION

Plaintiffs' Motion for Preliminary Injunction is Granted. An appropriate Order has been issued on this date.