Dennis L. JOHNSON, Plaintiff,

v.

**FLORIDA HIGH SCHOOL ACTIVITIES ASSOCIATION, INC., a non-profit Florida corporation, and the Pinellas County School Board, in its official capacity, Defendants.**

No. 95–1407–CIV–T–24(B).

United States District Court,
M.D. Florida,
Tampa Division.

Sept. 6, 1995.

John Emile Dubrule, John Patrick Cunningham, Gulfcoast Legal Services, Inc., St. Petersburg, FL and Brian Kenneth French, Gulfcoast Legal Services, Inc., Clearwater, FL, for plaintiff.

Leonard E. Ireland, Jr., Clayton, Johnston, Quincey, Ireland, Fedler, Gadd, Smith & Roundtree, Gainesville, FL and John W. Bowen, Pinellas County School Board, Largo, FL, for defendants.

### ORDER

BUCKLEW, District Judge.

This Cause is before the Court on Plaintiff's Motion for Preliminary Injunction (Doc. No. 6, filed August 25, 1995). Plaintiff filed a memorandum in support on August 24, 1995 (Doc. No. 3). Defendant Florida High School Activities Association, Inc. ("FHSAA") filed a memorandum in opposition on September 1, 1995 (Doc. No. 9). Defendant Pinellas County School Board (the "School Board") filed a "Stipulated Disposition of Claim" on September 1, 1995 (Doc. No. 8) signed by both Defendant School Board and the Plaintiff. In the stipulation, the Defendant School Board stated it does not oppose the Plaintiff's request and that it would not make any appearances in the matter.

Plaintiff originally filed a verified complaint and a motion for temporary restraining order (Doc. Nos. 1 & 2). The Court denied the motion for temporary restraining order on August 25, 1995 (Doc. No. 5), noting that the Plaintiff had not established that immediate and irreparable injury would result to the Plaintiff before the Defendants or their attorneys could be heard in opposition. The Court then set the motion for preliminary injunction for a hearing which the Court conducted on September 5, 1995.

■ In order for the Plaintiff to prevail on his motion for preliminary injunction, the Plaintiff must establish: (1) a substantial likelihood of prevailing on the merits; (2) an irreparable injury if the injunction does not issue; (3) a threatened injury to him that is greater than any damage the preliminary injunction would cause to FHSAA; and (4) the absence of any adverse effect on the public interest if the injunction issues. *Cafe 207, Inc. v. St. Johns County*, 989 F.2d 1136, 1137 (11th Cir.1993). Of these requirements, the most contested is whether the Plaintiff can establish a substantial likelihood of prevailing on the merits.

### Facts

The plaintiff, Dennis Johnson, is a nineteen year old senior at Boca Ciega High School in St. Petersburg, Florida. At approximately nine months, Dennis contracted meningitis, losing all hearing in one ear and substantially all hearing in the other. Because of this disability, Dennis' parents elected to wait a year before enrolling him in kindergarten. According to Dennis' mother, Gail M. Johnson, the decision to wait a year was made by her and her husband and was based upon their beliefs that Dennis was not "up to par" with the other children his age. Doc. No. 13, Transcript of Hearing, p. 20. Gail Johnson stated that Dennis was not talking very well for his age and that she and her husband attributed his deficiency to his hearing impairment. *Id.*

Dennis progressed adequately in kindergarten. However, the school system decided to hold Dennis back in first grade because of his performance in reading and language. *Id.* at 21. Once again, Dennis' deficiencies were attributed to his hearing impairment. Dennis was placed in special education classes in second grade and remained there until his sophomore year, when he entered Boca Ciega High School. He is provided an interpreter, notetaker and itinerant teacher at Boca Ciega. Additionally, just prior to entering eighth grade, Dennis lost all hearing in both ears.

Although a senior in high school, Dennis turned nineteen on June 29, 1995. According to the rules of the FHSAA, Dennis is ineligible to participate in high school athletics. FHSAA By–Law 19–4–1.[1] Dennis has played football and wrestled for the last three years. Unlike most of the other athletes, however, Dennis did not start playing organized sports until he entered high school. Dennis contacted the FHSAA about receiving a "hardship" exception due to the fact that Dennis' "ineligible age" was a result of his disability. Doc. No. 1, Exhibit G. The FHSAA responded that the Executive Committee of the FHSAA "does not have the authority to waive the age eligibility rule." Doc. No. 1, Exhibit H. The Court notes, however, that the rules of the FHSAA do provide for "undue hardship" exceptions as to the FHSAA's other rules, but that the age requirement is "unwaivable" because it is deemed an essential eligibility requirement by the FHSAA. *Id.* Thus, Dennis is currently precluded from participating in high school athletics. Additionally, the Court notes that if Dennis did participate, the rules of the FHSAA would result in Boca Ciega High School forfeiting those games in which Dennis participated. FHSAA By–Law 19–1–2.

Dennis is five foot nine inches and weighs 250 pounds and plays defensive tackle. Last year he weighed approximately 230 pounds and played the same position. According to the affidavit of Dennis' coach, Dennis is not considered a "star" player and is not "larger" than the other players. Doc. No. 1, Exhibit C: Affidavit of Jean P. Gordon. Additionally, a review of the rosters from two of Boca Ciega's opponents reveals that while Dennis is large, he is not the largest student to play defensive line. The Court notes that one of Boca Ciega's opponents lists a *junior* lineman as six foot four inches and 260 pounds. Additionally, as a wrestler, Dennis wrestles in the heavy weight division. This division limits competitors to a maximum of 275 pounds.

## Discussion

### (A) Substantially Likelihood of Prevailing on the Merits

Dennis' claim is premised upon the Rehabilitation Act, 29 U.S.C. § 794 and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et. seq.*[2] In order to establish a claim under the Rehabilitation Act, the Plaintiff must prove: (1) he has a disability as defined by the Act; (2) he is "otherwise qualified" to participate in interscholastic high school athletics as regulated by the FHSAA or that he may be "otherwise qualified" via "reasonable accommodations;" (3) he is being excluded from participating in interscholastic high school athletics solely because of his disability; and (4) the FHSAA receives federal financial assistance. *Sandison v. Michigan High Sch. Athletic Ass'n,* 863 F.Supp. 483, 488 (E.D.Mich.1994).

In order to establish a claim under Title II of the ADA, 42 U.S.C. § 12132, the Plaintiff must prove: (1) the FHSAA is a "public entity;" (2) he is a "qualified individual with a disability;" and (3) he has been excluded from participation from or denied the benefits of the activities of the public entity.[3] Alternatively, in order to establish a claim under Title III of the ADA, 42 U.S.C. § 12182, the Plaintiff must prove: (1) he is disabled; (2) the FHSAA is a "private entity" which operates a "place of public accommodation;" and (3) he was denied the opportunity to "participate in or benefit from services or accommodations on the basis of his disability," and that reasonable accommodations could be made which do not fundamen-

---

1. The rule prohibits anyone who turns age nineteen before September 1 of the current school year from participating in interscholastic sports.

2. The Plaintiff specifically relies on 42 U.S.C. § 12132 and alternatively 42 U.S.C. § 12182. *See* Doc. No. 1, p. 8–9. Section 12132 applies to public entities while section 12182 applies to private entities.

3. Section 12132 provides:

Subject to the provisions of this subchapter, no **qualified individual with a disability** shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a **public entity,** or be subjected to discrimination by any such entity.
(Emphasis added). See section 12131 for the definition of "public entity" and "qualified individual with a disability."

tally alter the nature of FHSAA' accommodations. *Id.*[4]

As for the requirements under the Rehabilitation Act, FHSAA concedes all elements except for the "otherwise qualified" requirement. Citing to the Eighth Circuit opinion in *Pottgen v. Missouri State High Sch. Activities Ass'n,* 40 F.3d 926 (8th Cir.1994), FHSAA contends that the Plaintiff is not "otherwise qualified" and that no "reasonable accommodations" can be made so as to make the Plaintiff "otherwise qualified." Specifically, FHSAA contends that the Plaintiff is too old and that the "reasonable accommodation" of waiving the age requirement fundamentally alters the purpose of the rule and is therefore an "unreasonable" accommodation. Accordingly, since waiving the age requirement is the only available "accommodation," and since this "accommodation" is unreasonable, the Plaintiff is not "otherwise qualified." Thus, he cannot participate in high school sports.

As for Plaintiff's Title II ADA claim, FHSAA argues that it is not a "public entity" as defined by section 12131(1) of the ADA and that the Plaintiff is not a "qualified individual with a disability" as defined by section 12131(2) of the ADA. Alternatively, FHSAA challenges Plaintiff's Title III claim, arguing that as a private entity, FHSAA does not operate a place of "public accommodation" as defined by section 12181(7) of the ADA Additionally, FHSAA contends that no "reason-

able accommodation" can be made because waiving the age requirement constitutes a "fundamental alteration." Once again, FHSAA cites to *Pottgen.*

■ In deciding whether the Plaintiff has established "a substantial likelihood of prevailing on the merits," the most important issue is the "otherwise qualified" requirement as supplemented by the "reasonable accommodation" requirement.[5] The Court rejects FHSAA's argument that FHSAA is not subject to the ADA. The Court finds that the FHSAA is a "public entity" as defined by the ADA. The Court notes that section 12131(1)(B) of the ADA defines "public entity" as any "other instrumentality of the state ... or local government." The FHSAA is a non-profit corporation which regulates the interscholastic activities of Florida high school students. As the regulatory arm for Florida high schools, its actions have been deemed state actions. *The Florida High Sch. Activities Ass'n, Inc. v. Thomas,* 434 So.2d 306, 308 (Fla.1983). The *Thomas* court specifically noted that since the FHSAA has "exclusive authority and responsibility for controlling all aspects of interscholastic activities in both public and private high schools throughout Florida," its actions constitute state action. *Id.* Thus, since its actions are deemed state action, it follows that the FHSAA is an "instrumentality of the state" and is therefore a "public entity." *See also Sandison,* 863 F.Supp. at 487 (holding that state athletic association

---

**4.** Section 12182(a) provides:

No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of **public accommodation** by any person who owns, leases (or leases to), or operates a place of public accommodation.

(Emphasis added). See section 12181 for the definition of "public accommodation" and "private entity."

**5.** This is "element number 2" under the Rehabilitation Act and "element number 2" under the Title II of the ADA and "element number 3" under Title III of the ADA. Although the elements are "termed" differently, they are the same. *See Sandison,* 863 F.Supp. at 488 (stating "[i]n order to establish a claim under the ADA, plaintiffs must demonstrate a similar set of ele-

ments to those they are required to prove under the Rehabilitation Act").

Simply stated, the issue is whether the Plaintiff is "otherwise qualified" to participate in interscholastic athletics as regulated by the FHSAA and if the Plaintiff is not "otherwise qualified," whether "reasonable accommodations" can be made so that the Plaintiff becomes "otherwise qualified." Accommodations are not reasonable if they impose " 'undue financial and administrative burdens' or if they require a 'fundamental alteration in the nature of the [the] program.' " *Pottgen,* 40 F.3d at 930 (citing *School Brd. of Nassau County v. Arline,* 480 U.S. 273, 287 n. 17, 107 S.Ct. 1123, 1131 n. 17, 94 L.Ed.2d 307 (1987). This analysis is identical to that when determining whether the Plaintiff is a "qualified individual with a disability" under 42 U.S.C. § 12132 and whether "reasonable accommodations" can be made as required under 42 U.S.C. § 12182. *See Sandison,* 863 F.Supp. at 488.

was a public entity). Having determined that the FHSAA is a public entity, the Court refrains from addressing all issues pertaining to Plaintiff's alternative claim that FHSAA is a "private entity" which operates a "place of public accommodation."

■ The Court also finds that the Plaintiff is a "qualified individual with a disability." Unlike the Rehabilitation Act, the ADA specifically limits the definition of a "qualified individual with a disability." Section 12131(2) provides that a "qualified individual with a disability" means:

> an individual with a disability who, with or without reasonable modifications to the rules, ... meets the **essential eligibility requirements** for the receipt of services or the participation in programs or activities provided by a public entity.

(Emphasis added). The FHSAA contends that since the age requirement is an essential eligibility requirement which the Plaintiff cannot meet, the Plaintiff is not a "qualified individual with a disability." Therefore, the ADA does not govern. This argument relies on *Pottgen* and is identical to the argument advanced by FHSAA when attacking the "otherwise qualified" requirement under the Rehabilitation Act. As discussed below, the Court rejects this argument.

■ As previously noted, in deciding whether the Plaintiff has established "a substantial likelihood of prevailing on the merits" as to both the Rehabilitation Act claim and the ADA claims, the most important issue is the "otherwise qualified" requirement as supplemented by the "reasonable accommodation" requirement. Boiled down, the dispositive issue before the Court is whether waiving the age requirement constitutes a "fundamental alteration" to the purposes of the rule. Resolution of this issue requires an examination of the purposes of the age requirement as applied to the instant case and as noted by the courts in *Pottgen* and in *Sandison*.

The purposes of the age requirement as promulgated by the FHSAA are two-hold. First, the rule promotes safety. By prohibiting players who turn age nineteen prior to September 1st of the current year from participating in interscholastic athletics, the rule liberally regulates the size and strength of the players. The second purpose is fairness, i.e. to create an even playing field. The rule prevents schools from "redshirting" their players so as to build a better program. These are admittedly salutary purposes.

In *Pottgen*, the Eighth Circuit provided a simple three step analysis as to the "otherwise qualified" requirement under the Rehabilitation Act. First, the court articulated the general rule that the disabled individual must be "otherwise qualified." In other words, the disabled individual must meet all of the essential eligibility requirements in spite of his disability. *Pottgen*, 40 F.3d at 929. Translated to the instant case, Dennis must be under age nineteen on September 1, 1995. Second, the court noted that the rule had an exception. If the disabled individual cannot meet all the essential eligibility requirements because of his disability, then the Court must determine whether "reasonable accommodations" might be made thereby enabling the disabled individual to become "otherwise qualified." *Id.* As applied to Dennis, FHSAA must waive the age requirement. Third, the court noted that there was an exception to the exception. An "accommodation" is not "reasonable" if it "fundamentally alters the nature of the program." *Id.* at 930. The *Pottgen* court went on to hold that the age requirement was a fundamental eligibility requirement which could not be waived. *Id.* Thus, since no other "reasonable accommodation" was available, Pottgen failed the "otherwise qualified" requirement. Accordingly, the Eighth Circuit reversed the district court, holding that it was error to grant the preliminary injunction.[6]

A review of the *Pottgen* opinion, however, reveals that the Court provided no analysis as to the relationship between the age re-

**6.** The *Pottgen* court repeated this analysis when determining whether the plaintiff was a "qualified individual with a disability" under 42 U.S.C. § 12131. Specifically, the court stated, "[c]onsistent with our Rehabilitation Act analysis, we find that MSHSAA has demonstrated that the age limit is an essential eligibility requirement of the interscholastic program." *Pottgen*, 40 F.3d at 931.

quirement and the purposes behind the age requirement. Rather, the court accepted the Missouri State High School Activities Association's assertion that the age requirement was an essential eligibility requirement. This is most evident from the dissent.

In other words, the age requirement could be modified for this individual player without doing violence to the admittedly salutary purposes underlying the age rule. But instead of looking at the rule's operation in the individual case of Ed Pottgen, both the Activities Association and this Court simply recite the rule's general justifications (which are not in dispute) and mechanically apply it across the board. But if a rule can be modified without doing violence to its essential purposes, as the District Court has found in the present case, I do not believe that it can be "essential" to the nature of the program or activity to refuse to modify the rule ... In determining this issue, it seems to me entirely appropriate to focus on the effect that modification of the requirement for the individual in question would have on the nature of the program. When the case is looked at from this point of view, it becomes clear that the Association could easily bend to accommodate Ed Pottgen without breaking anything essential.

40 F.3d at 932–33.[7]

Unlike the *Pottgen* court, the district court in *Sandison* addressed the purposes of the age requirement and whether those purposes would be undermined if the age requirement was waived for the particular plaintiffs. In concluding that the age requirement could be waived, the court stressed that waiving the age requirement would not thwart those purposes. As in the instant case, the purposes of the age requirement were safety and fairness. The *Sandison* court specifically noted that the goal of safety was not thwarted because the plaintiffs sought to participate in two non-contact sports, cross-country and track. *Sandison,* 863 F.Supp. at 490. Additionally, since the plaintiffs were mid-level

competitors and not "star" players, the court stated that their participation would not "provide any unfair competitive advantage to their respective teams." *Id.* Thus, the court concluded that waiving the age requirement constituted a "reasonable accommodation" by which the plaintiffs became "otherwise qualified."

■ The Court finds the analysis of the majority in *Sandison* and the dissent in *Pottgen* persuasive. The fact that the FHSAA deems the age requirement essential does not make it so. Rather, the relationship between the age requirement and its purposes must be such that waiving the age requirement in the instant case would necessarily undermine the purposes of the requirement. As the dissent in *Pottgen* stated, "if a rule can be modified without doing violence to its essential purposes ..., it [cannot] be 'essential' to the nature of the program or activity...." *Pottgen,* 40 F.3d at 932–33.

In the instant case, the Court finds that the purposes of the age requirement are not undermined by allowing Plaintiff to participate in interscholastic athletics. The Court emphasizes that while the Plaintiff is large, he is not the largest football player playing his position. There are individuals larger than him on the playing field. Thus, accepting the fact that football is a contact sport in which injuries do occasionally occur, the Court finds that allowing this individual to play does not facilitate or exacerbate the potential for injury. Additionally, the weight divisions in wrestling eliminate any safety concern as to that sport. Moreover, the Court finds that Boca Ciega High School does not gain an unfair advantage through the play of the Plaintiff. The Court notes that the Plaintiff is considered a mid-level player and not a "star." Furthermore, the Plaintiff is no more experienced than the other players. Rather, in comparison to some players he is less experienced. The Plaintiff has only played organized football for three years.

---

**7.** The procedural history behind the *Pottgen* decision is telling. By the time the Eighth Circuit heard the issue, the individual, Ed Pottgen, had already played his last game of interscholastic athletics. The issue as related to him was moot.

The only controversy before the court concerned "the portion of the injunction which prohibits [the defendant] from imposing sanctions upon a high school for whom or against whom Pottgen played." *Pottgen,* 40 F.3d at 928.

■ In conclusion, the Court finds that the Plaintiff has demonstrated a "likelihood of success on the merits." The Plaintiff has established the essential elements required to assert claims under the Rehabilitation Act and the ADA. Specifically, the Court finds that waiving the age requirement in the instant case does not fundamentally alter the nature of the program. Allowing Dennis Johnson to participate in interscholastic athletics in no way undermines the purposes of safety and fairness.[8] The Court stresses that its holding is limited to the facts before it.

**(B) Irreparable Injury if the Injunction Does Not Issue**

■ The Court finds that irreparable injury will result to the Plaintiff if the injunction is not granted. There is no doubt that playing interscholastic athletics has changed the Plaintiff's life. As a direct result of his participation, the Plaintiff has gained friends and confidence. Prior to playing sports he had few hearing friends. Since playing he has become more social and has been recognized not as a deaf student, but as a student who participates in high school athletics. During the hearing, the Plaintiff specifically commented on how important athletics is to his life. He enjoys showing people that a deaf person can play sports. Given that this is the Plaintiff's senior year, to prohibit him from playing would undermine any gains he has made.

**(C) A Threatened Injury to him that is Greater than Any Damage the Preliminary Injunction would cause to FHSAA**

■ There is no risk of harm to the FHSAA or others if the injunction is issued. As previously noted, allowing the Plaintiff to participate does not create an additional safety concern. His presence alone does not exacerbate the potential for injury. Additionally, granting the injunction does not subject the FHSAA to "numerous frivolous lawsuits" as it suggests. Rather, the Court's granting of the injunction is limited to the narrow case before it. Moreover, the Court rejects FHSAA's argument that waiving the age requirement forces FHSAA to undertake a comparative analysis of all the athletes in the league. *See* Doc. No. 13, Transcript of Hearing, p. 42. FHSAA suggests that to determine whether the goals of safety and fairness are undermined by letting the "disabled individual" play, the FHSAA would have to impanel a group of expert educators and physicians. This panel would examine the "disabled student" as against the other players on his or her team and on the opponents team, comparing strength and ability. *Id.* Simply stated, FHSAA's argument makes a mountain out of a mole hill. Strength and size disparities already exist throughout the league and yet no comparative analysis is undertaken. This Court finds that no such analysis is needed to determine whether an average size and average skilled disabled nineteen year old defensive linemen and wrestler can participate in interscholastic athletics when there is no indication that the student has held back or "reshirted" so as to better the program. Accordingly, the Court finds that the threatened injury to the Plaintiff is greater than any damage or injury the FHSAA might suffer as a result of the issuance of the injunction.

**(D) The Absence of any Adverse Effect on the Public Interest if the Injunction Issues**

■ The Court finds that the public interest is advanced by issuing the injunction and allowing the Plaintiff to participate in interscholastic athletics. Congress' concern to eliminate intentional and benign discrimination against disabled individuals is evident in the findings and purpose of the ADA. 42 U.S.C. § 12101. The purpose of the ADA and the Rehabilitation Act is "to include per-

---

8. The Court rejects FHSAA's argument that the age requirement is an absolute, unwaivable rule. The age requirement provides a means to an end. It serves as a simple threshold standard by which the FHSAA can achieve the desired goals of safety and fairness. Absent these purposes, the age requirement has no purpose. Thus, to assert that the age requirement is an absolute, unwaiva-ble rule, is to place form over substance. If, as in the instant case, the age requirement can be waived while simultaneously preserving the purposes of the requirement, then the age requirement as applied to that case is not essential. Therefore, waiving the age requirement constitutes a "reasonable accommodation" and must be undertaken.

sons with disabilities in society equal to those without disabilities by addressing discrimination against persons with disabilities." *Sandison,* 863 F.Supp. at 491. Thus, there is a significant public interest in eliminating discrimination against individuals with disabilities and issuing the injunction advances this interest. The injunction enables the Plaintiff to enjoy high school fully and to show to his fellow classmates that deaf persons can play sports.

### Conclusion

Plaintiff has established the four elements necessary in order for the Court to issue an injunction. Accordingly, it is **ADJUDGED AND ORDERED** that Plaintiff's Motion for Preliminary Injunction (Doc. No. 6, filed August 25, 1995) is **GRANTED.** The Defendant FHSAA is enjoined from enforcing its rules prohibiting the Plaintiff from playing interscholastic athletics (By–Law 19–4–1) and penalizing Boca Ciega High School for allowing the Plaintiff to play (By–Law 19–1–2).