386 S.E.2d 656

**Chris W. HAMILTON**

v.

**WEST VIRGINIA SECONDARY SCHOOLS ACTIVITIES COMMISSION.**

No. 19185.

Supreme Court of Appeals of West Virginia.

Nov. 8, 1989.

166 W.Va. 423, 426 n. 4, 276 S.E.2d 179, 182 n. 4 (1981).

Carl Andrews, Bowles, Rice, McDavid, Graff & Love, J. Robert Rogers, Charleston, for Chris Hamilton.

William R. Wooton, Wooton, Wooton & Fragile, Beckley, for W.Va. Secondary Schools Activities Com'n.

NEELY, Justice:

Chris Hamilton appeals to this Court the decision of the Circuit Court of Kanawha County that he is ineligible to participate in inter-scholastic football as a student at Herbert Hoover High School in Clendenin.

Chris Hamilton began playing football in the eighth grade, 1984–85, at Elkview Junior High School in Kanawha County. In the fall of 1985, Mr. Hamilton, then fourteen, began the ninth grade at Elkview. He played football that year, but failed all his major academic courses that year— English, mathematics, science, health, and American studies. The next school year, 1986–87, Mr. Hamilton repeated the ninth grade at Elkview. He did not play football. Since then, he has maintained at least a C average in his courses.[1] Having successfully completed the ninth grade, Mr. Hamilton entered the tenth grade at Herbert Hoover for the 1987–88 school year. He played football for Herbert Hoover that year and the next, 1988–89, when he was in the eleventh grade. The dispute in this case concerns Mr. Hamilton's status for the twelfth grade, the 1989–90 school year. He was eighteen years old at the beginning of his senior year.

On 13 May 1988, when Mr. Hamilton was a high-school sophomore, Herbert Hoover officials wrote to the state Secondary Schools Activities Commission[2] to determine whether Mr. Hamilton would be eligible to play football his senior year. On 19 May 1988, the Commission responded that Mr. Hamilton would not be eligible as a senior, in accordance with the Commission's rules, because he had repeated the ninth grade. Mr. Hamilton appealed the ruling to the Commission's Board of Appeals, which on 14 November 1988 sustained the denial of eligibility. On 8 March 1989, Mr. Hamilton brought his appeal before the Commission's highest tribunal, the Board of Review, which upheld the earlier finding.

On 13 June 1989, Mr. Hamilton sought a judicial declaration in the Circuit Court of Kanawha County that he was eligible to play football and an injunction against the Commission's forbidding him to play. On 18 August 1989, the Circuit Court denied the injunction and held that the Commission's rules, as interpreted, served a legitimate purpose and were validly applied to Mr. Hamilton.

Since this past August, the Circuit Court's order has been stayed for purposes of this appeal, and the Commission has been enjoined from prohibiting Mr. Hamilton from playing football. Herbert Hoover coaches decided to allow Mr. Hamilton to play, and he has. Mr. Hamilton is thought by some to be one the top one hundred high-school football players in the United States. At the time this case was argued before this Court, the 1989 football regular season had just ended. With Mr. Hamilton's help, Herbert Hoover achieved a fine record on the field and expected to lock horns with opponents in the state Triple A football playoffs. The case, therefore, is not moot. We now reverse the judgment of the circuit court and enter final judgment in Mr. Hamilton's favor.

The Commission's athletic eligibility rules set out a scheme for determining how many seasons junior-high and high-school

---

1. The rules of the state Board of Education require a 2.0 grade-point average (C) for students to be eligible to play inter-scholastic sports. *W.Va. C.S.R.,* 126–26 [1984].

2. The Secondary School Activities Commission was created by the legislature and directed to "promulgate reasonable rules and regulations providing for the control, supervision and regulation of the interscholastic athletic events" of high schools. *W.Va.Code,* 18–2–25 [1967].

students may participate in inter-scholastic athletics. *W.Va.C.S.R.*, 127–2–5 [1988]. The basic academic qualification for sports—a 2.0 grade average—is set by the state Board of Education. *W.Va.C.S.R.*, 126–26 [1984]. The Commission has also set out rules to insure that athletes make acceptable academic progress. *W.Va. C.S.R.*, 127–2–6 [1988]. The Commission's rules are aimed at problems peculiar to sports, especially practices that put sports at war with the fundamental academic *raison d'etre* of the schools. The practice at issue here is known as "red-shirting." It is the cynical and pernicious manipulation of a student's academic standing for the derivative athletic glory of adults—over-zealous coaches and parents. The scheme is to take young athletes of star quality, hold them back in school for a year, keep them off the field, and have them use that year to gain bulk, strength, and maturity. When the student is led back to the field after a year, he makes a more impressive show for coaches, parents, fans, and college recruiters. Red-shirting subverts the student's normal academic progress to unworthy and improper ends. It is a corrupt and mean-spirited practice. However, in their zeal to ban it, the Commission has cast its net too wide, taking in those, like Chris Hamilton, who have just had a run of hard luck in the classroom.

To ban red-shirting, the Commission determines eligibility not by the number of years a student *participates* in a sport, but by the number of years he *attends* the school. Thus, if coaches hold a student back and bench him for a year, that year nonetheless counts as a year of eligibility, as if he had played that year. The same is true if a student takes up a sport late in his school years: He can't stay on at the school just to play the sport. There is also an absolute age limit. To play sports in a school year, a student must not have reached age nineteen on September 1st at the beginning of the school year.

What makes the scheme unreasonable is the Commission's refusal to consider the circumstances surrounding a student's being held back. There is no inquiry into actual *intent* to red-shirt. Thus, in Mr. Hamilton's case, he is simply being punished for having failed the ninth grade. Academic failure is punished, modestly, in any case, because a student who does not maintain a C average must sit on the bench until he brings his grades up. The rationale behind that rule is that the student must put academics first. His participation in sports is limited in the semester immediately following his academic failure, so that he must focus on academics that semester. In this case, however, Mr. Hamilton did sit out the year following his academic failure and now would be made to sit out another year. Because Herbert Hoover is a three-year high school, Mr. Hamilton couldn't have played high-school ball in the ninth grade at any rate. In the ninth grade, he could have played only junior-high ball. Thus, the supposed sins of his junior-high career are being held against him in his senior year of high school. He is told he can play only two years of high-school football because, for academic reasons, he repeated a year of junior high. Under the circumstances, the scheme, as applied to Mr. Hamilton, is unfairly and unreasonably punitive.

The Commission points out a 1968 decision of this Court in which we found no jurisdiction in the courts to hear controversies involving athletic eligibility in the high schools. *W.Va. Secondary Schools Activities Commission v. Oakley*, 152 W.Va. 533, 164 S.E.2d 775 (1968). That decision, however, treated the Commission as simply a private association, not as a statutorily-created agency of the government. Without going into a lengthy discourse here, we must point out that the jurisprudence of procedural due process and state action has blossomed in the twenty years since Oakley. See, e.g., *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *Goss v. Lopez*, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975); Reich, "The New Property," 73 *Yale L.J.* 733 (1964).

The Commission argues that we should follow a California decision that upheld a similar rule there under similar facts. *Cal. Interscholastic Fed. v. Jones*, 197 Cal. App.3d 751, 243 Cal.Rptr. 271 (1988). That

decision, however, was based on constitutional equal protection grounds. The California appeals court simply held the red-shirting rule of their athletic federation bore some rational relation to a legitimate state purpose. In this case, on the other hand, Mr. Hamilton challenges the substantive reasonableness of the Commission's rule as applied to him. His claim is that the Commission has stepped beyond the bounds of its statutory mandate in promulgating an unreasonable rule and refusing to consider the legitimate argument of a student that he acted consistently with the stated purpose of the rule. The legal argument in this case differs vastly from the one that failed in the California *Jones* case, *supra.*

The legitimate purposes of the Commission's rules—to prevent red-shirting—may be accomplished in a more reasonable and less restrictive way. There must be some inquiry into the intent to red-shirt. The onus may well be on the player to demonstrate that he was held back solely for academic reasons, but Mr. Hamilton has clearly demonstrated that in this case. And in oral argument before this Court, the Commission admitted that they had no reason to believe that Mr. Hamilton did not repeat the ninth grade for legitimate academic reasons. If the Commission limits its enforcement to cases of intentional athletic red-shirting, that is sufficient to protect the best interests of the student. Such a policy, although requiring more inquiry than a *per se* rule, insures that academic progress is not subverted to the ignoble ends of athletic boosters. That, certainly is reasonable. Any possible unfairness to other teams—here, that Mr. Hamilton is a year older than he otherwise would have been as a high-school senior—is prevented by the Commission's unequivocal age limit for participation in inter-scholastic sports.

The Commission's scheme, as applied to Mr. Hamilton, is not within the Commission's legitimate authority to promulgate "reasonable" regulations for school sports. *W. Va. Code*, 18–2–25 [1967]. Therefore, we reverse the judgment of the Circuit Court of Kanawha County and enter final judgment in favor of the appellant.

Reversed; Final Judgment Entered Here for Appellant.