Joseph **DENNIN** and Nancy Dennin, as guardians and next friend of David Dennin; David Dennin; and the Trumbull Board of Education, Plaintiffs,

v.

The **CONNECTICUT INTERSCHOLASTIC ATHLETIC CONFERENCE, INC.,** Defendant.

Civ. No. 3:95CV2637 (PCD).

United States District Court, D. Connecticut.

Jan. 26, 1996.

Richard J. Buturla, Marsha B. Moses, Berchem, Moses & Devlin, P.C., Milford, CT, for Plaintiffs.

Richard D. O'Connor, Dana Shaw MacKinnon, Hugh W. Cuthbertson, Siegel, O'Connor, Schiff & Zangari, New Haven, CT, for Defendant.

## RULING ON MOTION FOR PRELIMINARY INJUNCTION

DORSEY, Chief Judge.

Plaintiffs move for a preliminary injunction to prevent defendant from denying plaintiff David Dennin ("Dennin") a waiver of its age eligibility rule. The parties were fully heard. An order granted a preliminary injunction with this full discussion of the issues to follow.

## I. BACKGROUND FACTS

Dennin is a nineteen-year old student at Trumbull High School with Down Syndrome. He is eligible for special education pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.* ("IDEA") and Connecticut General Statutes § 10–76(a) *et seq.*

Defendant, The Connecticut Interscholastic Athletic Conference, Inc. ("CIAC"), is a Connecticut non-profit corporation organized to supervise, direct and regulate interscholastic athletics in Connecticut with 175 public and private secondary schools. Trumbull High School is a CIAC member and must abide by its rules.

Due to his special education needs, Dennin spent four, rather than three, years in middle school, commencing high school in 1992 at sixteen. For the past three years, plaintiff was a fully eligible member of the Trumbull High School swim team. Although his times were slow, his relay teams at times scored points. Plaintiff's competition on the swim team is specified in his Individualized Education Program ("IEP"), developed as required by 20 U.S.C. § 1414(a)(5).

CIAC's eligibility rules provide that a player may not compete at age nineteen unless he reaches his nineteenth birthday on or after September 1. The purposes of the rule are to prevent competitive advantage for older athletes; to protect younger athletes from older athletes; to discourage students from delaying their education for athletic purposes; to prevent coaches from "red-shirting" athletes to gain competitive advantage; and to avoid younger athletes from preemption by older athletes.

Plaintiff turned nineteen before September 1, 1995. Without a waiver, he is not eligible for the 1995–96 season.

Dennin requested a waiver of the age eligibility rule. CIAC denied a waiver, but allowed him to swim as a non-scoring exhibition swimmer. He may swim in all regular season meets, but he and his relay team cannot earn points.

Dennin is aware of his ineligibility. Being treated no differently then others is important in his relations with the community. The absence of differential treatment fosters his sense of self-esteem and self-confidence and in turn, nurtures his belief in his ability and willingness to function in a community, most of whose members are not afflicted with his limitations.

Participation on the Trumbull swim team is open to all. No one is cut on the basis of ability. Co-plaintiff, the Trumbull Board of Education joins in Dennin's requested relief and fully supports his claim to full eligibility and participation which it would allow but for CIAC's eligibility rules.

## II. DISCUSSION

■ To issue a preliminary injunction, it is well-settled that movant must show (a) irreparable harm; and (b) either (1) probable success on the merits, or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party seeking injunctive relief. *See, e.g., Sperry Int'l Trade, Inc. v. Gov't of Israel,* 670 F.2d 8, 11 (2d Cir.1982); *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.,* 596 F.2d 70, 72 (2d Cir.1979).

### A. *Irreparable Harm*

■ If the requested injunction does not issue, Dennin will swim in meets as an exhi-

bition swimmer. He is not listed on Trumbull High School's eligibility list submitted to the CIAC, nor on the team roster or the team score book. He cannot score points for the team and his relay team is ineligible to score points.

Plaintiff's competition on the swim team has increased his self-esteem and social skills. It is considered sufficiently important to his development to be included in his IEP. The limitations on Dennin deprive him of essential badges and indicia of full team membership and participation. Plaintiff is able to understand this difference in treatment. It may diminish his swimming in meets, and in turn his sense of parity with his teammates. Such differential treatment will negatively impact his self-esteem and thereby his IEP goals.

Any relay team plaintiff swims on cannot earn points. Potentially he will be eliminated if his relay team cannot score points which might otherwise be scored despite Dennin's slowness. His relay teammates cannot earn points without a fully eligible team member. These points are necessary to earn varsity letters. Such losses of points would negatively impact plaintiff's self-esteem. In a close meet, the coach may be placed in the position of having to choose between allowing Dennin to swim or losing the meet.

The harm is immediate and irreparable. The swim season is progressing. Meets are occurring and are not awaiting a decision here. Accordingly, plaintiffs have established irreparable harm that cannot be compensated by monetary damages nor recouped.

### B. *Probability of success on the merits*

Plaintiffs allege defendant's waiver denial violates the Rehabilitation Act, 29 U.S.C. § 794, the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and 42 U.S.C. § 1983 and the IDEA.

#### 1. *Rehabilitation Act*

■ To establish a claim under the Rehabilitation Act, plaintiff must prove:

(1) he has a disability as defined by the Act;

(2) he is "otherwise qualified" to participate in interscholastic high school athletics as regulated by the [CIAC] or that he may be "otherwise qualified" via "reasonable accommodations;"

(3) he is being excluded from participating in interscholastic high school athletics solely because of his disability; and

(4) the [CIAC] receives federal financial assistance.

*Johnson v. Florida High School Activities Ass'n, Inc.*, 899 F.Supp. 579, 582 (M.D.Fla. 1995).

#### a. *Individual with a disability*

■ An individual with a disability is defined as "any person who ... has a physical or mental impairment which substantially limits one or more of such person's major life activities." 29 U.S.C. § 706. Down Syndrome is such a disability. Plaintiff is covered by the Rehabilitation Act.

#### b. *Receipt of federal financial assistance*

■ CIAC receives federal financial assistance indirectly through fees paid by 150 public schools which receive federal assistance. Programs receiving indirect federal financial assistance are subject to the Rehabilitation Act. *See Pottgen v. Missouri High School Activities Ass'n*, 857 F.Supp. 654, 663 (E.D.Mo.1994), *rev'd on other grounds*, 40 F.3d 926 (8th Cir.1994); *Sandison v. Michigan High School Athletic Ass'n*, 863 F.Supp. 483 (E.D.Mich.1994), *rev'd in part on other grounds*, 64 F.3d 1026 (6th Cir.1995); *Jacobson v. Delta Airlines, Inc.*, 742 F.2d 1202, 1212 (9th Cir.), *cert. denied*, 471 U.S. 1062, 105 S.Ct. 2129, 85 L.Ed.2d 493 (1985). CIAC is a program which receives federal financial assistance indirectly from its members "which delegate to it a portion of their responsibilities for regulation of interscholastic activities." *Pottgen*, 857 F.Supp at 663. In addition, it holds competitions in facilities receiving federal financial assistance, and most of the team coaches participating in the competitions are employed by schools receiving federal financial assistance. *See Sandison*, 863 F.Supp. at 487.

### c. *"Otherwise qualified" individual*

 Dennin is an "otherwise qualified" individual if with "reasonable accommodation" he can meet the "necessary" or "essential" requirements of the program. *Sandison v. Michigan High School Athletic Ass'n,* 64 F.3d 1026, 1034 (6th Cir.1995); *Pottgen v. Missouri St. High School Activities Ass'n,* 40 F.3d 926 (8th Cir.1994). An "otherwise qualified" individual is one who meets all the essential requirements of a program in spite of his disability. *Pottgen,* 40 F.3d at 929; *Johnson,* 899 F.Supp. at 584. To be "otherwise qualified," defendant argues that Dennin must meet the age requirement.

 However, if the individual does not meet an essential requirement because of his disability, it must be determined if a "reasonable accommodation" would enable the individual to become "otherwise qualified." *Pottgen,* 40 F.3d at 929; *Johnson,* 899 F.Supp. at 584. In this case, the question is whether CIAC's waiver of the age requirement would be a reasonable accommodation. An accommodation is not "reasonable" if it imposes "undue financial or administrative burdens" or "fundamentally alters the nature of the program." *Pottgen,* 40 F.3d at 929 (citing *School Bd. of Nassau County, Fla. v. Arline,* 480 U.S. 273, 287 n. 17, 107 S.Ct. 1123, 1131 n. 17, 94 L.Ed.2d 307 (1987)); *Johnson,* 899 F.Supp. at 584. Thus, the question presented is whether waiver of the age requirement fundamentally alters the program or imposes undue burdens.

Courts disagree on this issue. In *Pottgen,* plaintiff was disabled and ineligible to play interscholastic baseball because he was nineteen. The *Pottgen* court found the age rule was essential to prevent competitive advantage, to protect younger athletes from harm, to discourage athletes from delaying their education, and to prevent red-shirting. *Pottgen,* 40 F.3d at 929. The court held that waiver of an essential eligibility standard in that case would constitute a fundamental alteration in the nature of the baseball program. *Id.* at 930. Since no reasonable accommodation could be made, plaintiff was not "otherwise qualified." *Id.*

The *Sandison* court followed *Pottgen,* determining that waiving the age requirement for nineteen-year old disabled students fundamentally altered the nature of the track and cross-country program because more mature and competitive students would be competing. *Sandison,* 64 F.3d at 1035. It also determined that waiving the age requirement would constitute an undue burden, as a case-by-case analysis would be necessary to determine unfair competitive advantage. *Id.*

 Other courts have rejected this analysis. In *Johnson,* the court considered whether a disabled student could be excluded from football and wrestling because he was not age eligible. Rather than a blanket holding that the requirement was essential, and that *any* waiver would be unreasonable, *Johnson* undertook an individualized analysis of the requirement and its underlying purposes. *Johnson,* 899 F.Supp. at 585. In analyzing the requirement,

> the relationship between the age requirement and its purposes must be such that waiving the age requirement *in the instant case* would necessarily undermine the purposes of the requirement.... "[I]f a rule can be modified without doing violence to its essential purposes ... it cannot be essential to the nature of the program or activity...."

*Id.* (quoting *Pottgen,* 40 F.3d at 932–33 (Arnold, C.J., dissenting) (emphasis added)). Plaintiff there was found not a safety hazard, was a mid-level player without competitive advantage, and had less experience than other players. *Id.* Therefore, waiving the age requirement was found not to fundamentally alter the nature of the program. *Id.*

Similar individual analyses have found an age requirement waiver to be a reasonable accommodation. *See Booth v. Univ. Interscholastic League,* No. A90CA764, 1990 WL 484414 (W.D.Tex. Oct. 4, 1990); *Univ. Interscholastic League v. Buchanan,* 848 S.W.2d 298, 302–03 (Tex.App.1993).

The reasoning of *Johnson* and the dissent in *Pottgen* is persuasive. It would be an anathema to the goals of the Rehabilitation Act to decline to require an individualized analysis of the purposes behind the age requirement as applied to Dennin. Failure to

perform such an analysis would exalt the rule itself without regard for the essential *purposes* behind the rule.

So analyzed, waiver of the rule for Dennin could not undermine any of the purposes of the CIAC rule. Plaintiff has no competitive advantage. He is, without dispute, always the slowest swimmer in the pool. He is no safety risk to himself or others. Swimming is not a contact sport. His education was not delayed to gain a competitive advantage but only because of his disability. He is not a red-shirt threat. Granting him a waiver would not alter the nature of the swimming program.

Additionally, a waiver for Dennin does not impose an undue burden upon defendant. CIAC claims that a waiver in this case will result in a flood of waiver applications which will be administratively impossible to handle. CIAC is not required to grant waivers to *all* students who fail to meet the age requirement. However, it would be required under the Rehabilitation Act to give the disabled individual consideration, including to Dennin, as he falls within the Act. *See, e.g., Booth*, 1990 WL 484414 at *4. The holding of this case only affects CIAC's consideration of the disabled, not its consideration of all students failing to meet the age requirement.

In Dennin's case, such consideration would be relatively simple. In some cases it would be more complex, depending on the sport in question, the size, agility, strength and endurance of the individual, and whether the quality of his/her athletic capacity/capability is enhanced by his/her age beyond eighteen. That it may prove difficult in some cases does not substantiate the claim that it would be unduly burdensome or destructive of the purpose of the rule.[1]

Assuming, arguendo, a waiver for plaintiff does increase applications for waivers of disabled students, the cost may be passed onto the schools through fees.

Defendant argues that it has already made a reasonable accommodation by granting Dennin exhibition status. This status treats Dennin fundamentally differently from fellow teammates. The Rehabilitation Act seeks full participation and equality of the disabled to the extent reasonable accommodations can be made. Thus a reasonable accommodation of full participation of Dennin is required.

### d. Discrimination "solely because of" disability

■ Finally, it must be determined whether Dennin is being excluded from participating "solely because of" his disability. Defendant argues that the age eligibility rule is a neutral rule neutrally applied to him. Therefore, defendant claims, he is not being excluded solely because of his handicap, but because of his age. *See, e.g., Sandison*, 64 F.3d at 1032.

This argument ignores the fact that the *sole* reason that Dennin is in school at nineteen is due to his disability. But for his disability, his fourth year of athletic participation (provided in CIAC's rules) would not have been when he had become nineteen but at age eighteen. *See Buchanan*, 848 S.W.2d at 302. In rejecting the same argument in *Booth*, in which a disabled student was excluded from interscholastic athletics because of an age eligibility rule, the court noted that "[t]o accept such an analysis would mean that any student who fails to meet [defendant's] requirement as a result of a past handicap is not 'otherwise qualified,' and therefore is not protected by the Rehabilitation Act." *Booth*, 1990 WL 484414 at *3. Defendant's argument would result in the rule insulating itself from scrutiny.

The Supreme Court noted in *Alexander v. Choate*, 469 U.S. 287, 105 S.Ct. 712, 83 L.Ed.2d 661 (1985) that under the Rehabilitation Act, the question of whether an individual is "otherwise qualified" and whether he is a victim of "discrimination" were "two sides of a single coin." *Id.* at 299 n. 19, 105 S.Ct.

---

1. CIAC has in place a waiver mechanism for eligibility requirements. There is no limitation on which rules are waivable. Subjective case-by-case analysis must have been foreseen for considering such waivers. In fact, transfer waivers are routinely considered. The presence of this mechanism weakens CIAC's argument that case-by-case consideration of waivers constitutes an undue burden. The ruling here does not mandate the grant of a waiver in any case but this one.

at 720 n. 19. The ultimate question, was whether reasonable program modifications were required to accommodate the disabled. *Id.* Applying this analysis, the court in *Booth* determined that a waiver of the age eligibility rule was a "reasonable accommodation." *Booth,* 1990 WL 484414 at *3.[2]

The sole reason plaintiff is in school at nineteen is his disability. Since plaintiff is "otherwise qualified" due to the availability of a reasonable accommodation, under the Rehabilitation Act, defendant must grant a waiver to plaintiff.

## 2. ADA

 To establish a claim under Title III of the ADA, 42 U.S.C. § 12182, plaintiff must prove

(1) he is disabled;

(2) the [CIAC] is a "private entity" which [owns, leases (or leases to), or operates] a "place of public accommodation;" and

(3) he was denied the opportunity to "participate in or benefit from services or accommodations on the basis of his disability," and that reasonable accommodations could be made which do not fundamentally alter the nature of [CIAC] accommodations.

*Johnson,* 899 F.Supp. at 582. A "private entity" is defined as "any entity other than a public entity...." 42 U.S.C. § 12181(6). "Place of public accommodation" is defined in 42 U.S.C. § 12181(7), which lists private entities considered "public accommodations." Such private entities include "a place of exhibition or *entertainment,*" § 12181(7)(C), "a ... secondary, undergraduate, or postgraduate private school, or *other place of education,*" § 12181(7)(J), or "a gymnasium ... or other place of exercise or *recreation,*" § 12181(7)(L) (emphasis added).

CIAC's purposes include "to supervise, direct and control interscholastic athletics in Connecticut," and "to develop intelligent recognition of the proper place of interscholastic

athletics in the *education* of our youth." *See* CIAC Handbook, Sec. 1.3. Member schools delegate significant control and authority to CIAC in regulating this athletic component of education. Additionally, CIAC sponsors athletic competitions and tournaments. By managing and controlling the aforementioned, it "operates" places of public accommodation, i.e., a place of education, entertainment and/or recreation. The fact that some of these facilities might be owned by a public entity, i.e., a public school, does not affect the conclusion that CIAC "operates" the facilities for purposes of athletic competition. *But see Sandison,* 64 F.3d at 1036.

 Assuming arguendo that CIAC is not a private entity operating a place of public accommodation, to establish a claim under Title II of the ADA, 42 U.S.C. § 12132, plaintiff must prove

(1) the [CIAC] is a "public entity;"

(2) he is a "qualified individual with a disability;" and

(3) he has been excluded from participation from or denied the benefits of the public entity.

*Johnson,* 899 F.Supp. at 582. A "public entity" is defined as "(A) any State or local government; (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government...." 42 U.S.C. § 12131(1). Public schools delegate authority to CIAC to direct and control their athletic programs. Public schools play a substantial role in determining and enforcing CIAC policies. Therefore, CIAC is an "instrumentality of a State."

 Once defendant is found to be covered by ADA, then it must be determined if Dennin falls under the second element of Title II or the third element of Title III. The Rehabilitation Act analysis for an "otherwise qualified" individual is utilized to determine these elements under the ADA. *Johnson,* 899 F.Supp. at 583 n. 5; *see Reaves*

---

**2.** Plaintiff also claims disparate impact. The Supreme Court declined to decide what conduct can be challenged under the Rehabilitation Act as causing disparate impact. *See Alexander,* 469 U.S. at 299, 105 S.Ct. at 720. Evidence was introduced that the number of disabled student entering high school later than "normal" stu-

dents is increasing. This does not provide support for the claim that as the age requirement applies to disabled students participating in sports, they are disproportionately excluded. Accordingly, the disparate impact claim is not addressed.

*v. Mills,* 904 F.Supp. 120 (W.D.N.Y.1995). Since Dennin is "otherwise qualified" under the Rehabilitation Act, he has met all the elements under Title III, or alternatively, Title II of the ADA.

### C. § 1983

Dennin also contends that the enforcement of the age requirement deprives him of his constitutional rights. To state a cause of action under § 1983, he must show (1) the conduct complained of was committed by a person acting under color of state law; and (2) such conduct deprived him of rights, privileges or immunities secured by the Constitution or laws of the United States. *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1912–13, 68 L.Ed.2d 420 (1981). Actions of voluntary interscholastic athletic associations, of which public schools comprise part of the membership, constitute state action. *Clark v. Arizona Interscholastic Ass'n,* 695 F.2d 1126, 1128 (9th Cir.1982), *cert. denied,* 464 U.S. 818, 104 S.Ct. 79, 78 L.Ed.2d 90 (1983); *Yellow Springs Bd. of Educ. v. Ohio High School Athletic Ass'n,* 647 F.2d 651, 653 (6th Cir.1981).

Although there generally is no constitutional right to participate in interscholastic sports, it has been held that inclusion of such activity in an IEP transforms it into a federally protected right. *See T.H. v. Montana High School Ass'n,* No. CV 92–150–BLG–JFB, 1992 WL 672982 at *4 (D.Mont. Sept. 24, 1992). Accordingly, due process is required before Dennin can be deprived of that right. Due process requires a "meaningful, individualized inquiry into [plaintiff's] request for a waiver." *Id.* This includes consideration of whether any of the stated purposes behind the rule are implicated by plaintiff's participation. *Id.* at *5.

CIAC declined to inquire meaningfully and consider whether Dennin's participation would undercut the purposes behind the rule. A waiver for Dennin was simply not considered. In fact, CIAC officials could provide no reason that an individualized inquiry would not permit a waiver to be granted to plaintiff. As earlier noted, his participation was not shown to undermine any of the stated purposes of the rule. Since, upon

individualized inquiry, no reason not to grant the waiver exists, the waiver should be granted.

### III. CONCLUSION

Plaintiff has established irreparable harm absent an injunction, and probability of success on the merits. The record here reflects no justification under the Rehabilitation Act, the ADA, and § 1983 and the IDEA for defendant to refuse to waive the age requirement for Dennin. The motion for preliminary injunction is granted. Without disagreement from the parties, this ruling is dispositive of the merits of plaintiff's claims for relief. The only issue flagged as possibly to be raised is that if defendant ultimately prevails on appeal, it may impose penalties or attorney's fees pursuant to its bylaws upon Trumbull High School.

SO ORDERED.