568 S.E.2d 32

**Jarrett BAISDEN, Petitioner/Appellant Below, Appellee**

v.

**WEST VIRGINIA SECONDARY SCHOOLS ACTIVITIES COMMISSION, Respondent/Appellee Below, Appellant**

No. 30317.

Supreme Court of Appeals of West Virginia.

Submitted June 11, 2002.

Decided June 27, 2002.

Scott D. Maddox, Plymale & Maddox, P.L.L.C., Huntington, for the Appellee.

William R. Wooton, Roslyn Clark–Payne, The Wooton Law Firm, Beckley, for the Appellant.

ALBRIGHT, Justice.

This is an appeal by the West Virginia Secondary School Activities Commission (hereinafter "WVSSAC") from an August 28, 2001, order of the Circuit Court of Wayne County granting a permanent injunction prohibiting the WVSSAC from enforcing its age rule against Appellee Jarrett Baisden, a senior at Spring Valley High School during the

2001–2002 school year who sought to play high school football at the age of nineteen. On appeal to this Court, the WVSSAC contends that the lower court erred by ruling that the age rule was unenforceable against Mr. Baisden. Based upon the fact that Mr. Baisden has graduated and is no longer a student at Spring Valley High School, we find these issues surrounding his eligibility to play high school football technically moot. However, due to the importance of the issues raised and the probability that such issues will affect the rights of other students facing similar circumstances, we herein address the issues presented by Mr. Baisden and ultimately reverse the decision of the lower court.[1]

### I. Facts and Procedural History

On January 2, 2001, Mr. Barry Scragg, principal of Spring Valley High School, submitted a written inquiry to the WVSSAC regarding whether Mr. Baisden could play football for the high school team during the 2001–2002 school year despite the fact that he had attained the age of nineteen prior to August 1, 2001.[2] The Executive Director of the WVSSAC ruled that Mr. Baisden was ineligible to participate in interscholastic athletic competition for the 2001–2002 school year due to the fact that West Virginia Code of State Regulations section 127–2–4.1 provides that "[a] student in high school who becomes 19 ... before August 1 shall be ineligible for interscholastic competition." Upon review, the eligibility determination was upheld by both the WVSSAC Board of Appeals and the WVSSAC Board of Review.

On June 6, 2001, Mr. Baisden appealed the WVSSAC determination to the lower court and requested a permanent injunction prohibiting the WVSSAC from enforcing its eligibility decision. By order dated August 28, 2001, the lower court granted a permanent injunction prohibiting the WVSSAC from en-

forcing its age rule against Mr. Baisden, based upon the fact that Mr. Baisden's learning disability had required him to repeat two years of education and that application of the age rule discriminated against Mr. Baisden based upon the delay in his education occasioned by his learning disability.

The WVSSAC now contends that the lower court erred by granting the injunction and ruling that the age rule was unenforceable against Mr. Baisden.

### II. Standard of Review

■ In *Weaver v. Ritchie*, 197 W.Va. 690, 478 S.E.2d 363 (1996), this Court set forth the following *a priori* standard of review with regard to permanent injunctions: "In reviewing challenges to the findings and conclusions of the trial court, we apply a two-pronged deferential standard of review with the final order and ultimate disposition (granting of the permanent injunction) reviewed under an abuse of discretion standard, and the underlying factual findings under a clearly erroneous standard." *Id.* at 693, 478 S.E.2d at 366. In syllabus point one of *G Corp, Inc. v. MackJo, Inc.*, 195 W.Va. 752, 466 S.E.2d 820 (1995), this Court also explained as follows:

"Unless an absolute right to injunctive relief is conferred by statute, the power to grant or refuse or to modify, continue, or dissolve a temporary or a permanent injunction, whether preventive or mandatory in character, ordinarily rests in the sound discretion of the trial court, according to the facts and the circumstances of the particular case; and its action in the exercise of its discretion will not be disturbed on appeal in the absence of a clear showing of an abuse of such discretion." Syl. pt. 11, *Stuart v. Lake Washington Realty*, 141 W.Va. 627, 92 S.E.2d 891 (1956).

---

1. The Court appreciates the quality of the arguments and briefs in this difficult matter. The WVSSAC has dealt with these complex issues admirably, and Mr. Baisden has presented skillful arguments in favor of protection against discrimination for students in this quandary.

2. If Mr. Baisden had progressed normally through school, he would have graduated from high school in the spring of 2000. However, Mr.

Baisden was retained in first and sixth grades due to below average academic performance. In 1997, during his eighth grade year, Mr. Baisden was diagnosed with specific learning disabilities relative to math and language. An individualized education plan (IEP) was developed and specific curriculum modifications were made to accommodate his learning disabilities. Mr. Baisden turned nineteen on July 27, 2001.

## III. Discussion

### A. Mootness

We explained as follows in syllabus point one of *Israel by Israel v. West Virginia Secondary Schools Activities Commission,* 182 W.Va. 454, 388 S.E.2d 480 (1989): [3]

Three factors to be considered in deciding whether to address technically moot issues are as follows: first, the court will determine whether sufficient collateral consequences will result from determination of the questions presented so as to justify relief; second, while technically moot in the immediate context, questions of great public interest may nevertheless be addressed for the future guidance of the bar and of the public; and third, issues which may be repeatedly presented to the trial court, yet escape review at the appellate level because of their fleeting and determinate nature, may appropriately be decided.

An example of a situation in which the technical mootness of an issue was not deemed to preclude this Court's consideration of the matter is *Cathe A. v. Doddridge County Board of Education,* 200 W.Va. 521, 490 S.E.2d 340 (1997), a case in which a student's period of expulsion had ended before this Court had the opportunity to decide the case. In resolving the mootness issue in *Cathe A.,* this Court recognized that it retains discretion to address issues raised in technically moot cases and utilized the approach outlined in *Israel* to conclude that since other students may also be affected by the appeal of a particular student's case, the substantive issues should be resolved. 200 W.Va. at 527, 490 S.E.2d at 346.

Similarly, in the present case, based upon the fact that the circumstances of Mr. Baisden's request for a waiver from the age nineteen rule will certainly be encountered by other students, this case satisfies the third factor identified in *Israel.* This issue "may be repeatedly presented to the trial court, yet escape review at the appellate level because of [its] fleeting and determinate nature...." 182 W.Va. at 455, 388 S.E.2d at 481. We consequently determine that the technical mootness of this issue does not preclude our consideration thereof.

### B. Application of the Age Nineteen Rule

The issue of whether application of the age nineteen rule to a student whose learning disability has caused him to remain in high school beyond the age of eighteen has been the subject of vigorous debate in recent years. Age limitations imposed by counties, states, or interscholastic sports associations typically bar students from participating in interscholastic sport competitions after a certain age, most commonly framed in terms of prohibiting participation during a given school year if the student has attained the age of nineteen prior to August or September of that year. *See generally,* John E. Theuman, *Validity, Under Rehabilitation Act or Americans With Disabilities Act, of Rules or Laws Limiting Participation in Interscholastic Sports to Those Below Specified Age,* 143 A.L.R.Fed.567 (1998). The rules are typically strictly enforced, based upon the safety issues raised by permitting older, larger, more experienced players to compete against younger students. Where students remain in high school beyond the age of eighteen due to disabilities, however, the exclusion of such individuals from athletic participation has been the subject of extensive deliberation focused primarily upon whether exclusion is violative of state and/or federal guidelines enacted to protect the rights of disabled individuals. Implicated federal legislation includes section 504 of the Rehabilitation Act, 29 U.S.C. § 794; Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12131; and Title III of the ADA, 42 U.S.C. § 12181.[4] The West

---

**3.** *Israel* involved rules regarding gender fairness in statewide athletic programs.

**4.** In *Gonzales v. Garner Food Services, Inc.,* 89 F.3d 1523 (11th Cir.1996), the court referenced section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and noted that "decisions interpreting the Rehabilitation Act, the ADA's statuto-

ry predecessor, are relevant precedent in interpreting the provisions of the ADA." *Id.* at 1529.

Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12132, prohibits discrimination by state and local government and provides, in part, that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the

Virginia Human Rights Act, specifically West Virginia Code § 5–11–9 (1998) (Repl.Vol. 1999), governs unlawful discriminatory practices in this State.[5]

Where students have alleged that application of age limitations effectively discriminated against them because of their disabilities, or more precisely because of the delays in education occasioned by their disabilities, courts in state and federal jurisdictions throughout the country have not been uniform in their responses. The primary point of controversy is whether the disabled student is "qualified" within the meaning of that term in the applicable statutes, i.e., whether the students are capable of meeting the essential requirements of the program with or without "reasonable accommodations." In the ADA, for instance, the term "qualified individual with a disability" is defined at section 12131(2) as follows:

The term "qualified individual with a disability" means an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.

Some courts encountering this question have approached the definitions quite literally, holding that disabled students were not entitled to injunctive relief under either statute because (1) they were incapable of satisfying an essential program requirement, namely

the age limit itself; (2) the only accommodation available to achieve qualification would be a total waiver of the age limit, and such waiver would constitute a fundamental alteration in the program not required by anti-discrimination legislation; and/or (3) enforcement of the age rules simply was not "discrimination" because the limits were based only on age and were neutral, applied equally to disabled and non-disabled students. *See Sandison v. Michigan High School Athletic Ass'n, Inc.,* 64 F.3d 1026 (6th Cir.1995); *Pottgen v. Missouri State High School Activities Ass'n,* 40 F.3d 926 (8th Cir.1994), fully discussed below.

Other courts, however, have granted preliminary injunctions in such cases, as discussed below, reasoning that (1) although an age limit might be considered neutral with respect to disabled and non-disabled students, its application to a disabled student constituted discrimination where the student's disability was the only reason the student was still in school beyond the age limit; and (2) principles of reasonable accommodation required that individualized assessments be provided to disabled students who exceeded the age limit because their disabilities had required them to remain in school past the age limit. The assessments would be designed to examine the issue of whether allowing them to participate in the sport would undermine the legitimate purposes of the age limit.

This Court has not previously addressed the precise issue facing us today. In applying the requirements of the West Virgi-

---

benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."

Title III of the ADA similarly prohibits discrimination by places of public accommodations, with places of public accommodations defined at 42 U.S.C. § 12181(7).

The requirements of these sections are very similar in application. The ADA is patterned to some extent upon the Rehabilitation Act; thus, decisions explaining the Rehabilitation Act and its regulations provide effective guidance regarding "the meaning of the same terms in the new law." *Vande Zande v. Wisconsin Dep't of Admin.,* 44 F.3d 538, 542 (7th Cir.1995).

**5.** West Virginia Code § 5–11–9(6)(A) provides that it shall be unlawful discriminatory practice:

(6) For any person being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodations to:

(A) Refuse, withhold from or deny to any individual because of his or her race, religion, color, national origin, ancestry, sex, age, blindness or disability, either directly or indirectly, any of the accommodations, advantages, facilities, privileges or services of the place of public accommodations[.]

This Court in *Israel* found that for the purposes of the Human Rights Act, the WVSSAC is a place of public accommodations. 182 W.Va. at 464, 388 S.E.2d at 490.

nia Human Rights Act in *Skaggs v. Elk Run Coal Co., Inc.*, 198 W.Va. 51, 479 S.E.2d 561 (1996), however, this Court addressed the discrimination and reasonable accommodation issues within the context of employer-employee relations and announced the following at syllabus point one:

> Under the West Virginia Human Rights Act, W. Va.Code, 5–11–9 (1992), reasonable accommodation means reasonable modifications or adjustments to be determined on a case-by-case basis which are designed as attempts to enable an individual with a disability to be hired or to remain in the position for which he or she was hired. The Human Rights Act does not necessarily require an employer to offer the precise accommodation an employee requests, at least so long as the employer offers some other accommodation that permits the employee to fully perform the job's essential functions.

Thus, the *Skaggs* Court mandated an individualized, case-by-base analysis of the reasonable accommodation issue one the claim for breach of duty to so provide was properly made. Syllabus point two of *Skaggs* described the requirements for stating a claim for breach of the duty to provide reasonable accommodations, explaining as follows:

> To state a claim for breach of the duty of reasonable accommodation under the West Virginia Human Rights Act, W. Va.Code, 5–11–9 (1992), a plaintiff must alleged the following elements: (1) The plaintiff is a qualified person with a disability; (2) the employer was aware of the plaintiff's disability; (3) the plaintiff required an accommodation in order to perform the essential functions of a job; (4) a reasonable accommodation existed that met the plaintiff's needs; (5) the employer knew or should have known of the plaintiff's need and of

the accommodation; and (6) the employer failed to provide the accommodation.

■ In *Hamilton v. West Virginia Secondary Schools Activities Commission,* 182 W.Va. 158, 386 S.E.2d 656 (1989), this Court rejected the WVSSAC's blanket application of the "eight semester" rule enacted to ban red-shirting for athletic advantage.[6] In the syllabus of that opinion, this Court explained:

> When a state Commission is authorized to promulgate "reasonable" regulations for high-school athletics, and the Commission creates a scheme to prevent students' being held back in school for athletic purposes, such a scheme is applied unreasonably when the Commission refuses to consider legitimate academic reasons for a student's repeating a grade in junior high school. *W.Va.Code,* 18–2–25 [1967].

This Court in *Hamilton* stated: "What makes the scheme unreasonable is the Commission's refusal to consider the circumstances surrounding a student's being held back." *Id.* at 160, 386 S.E.2d at 658. Mr. Hamilton was "simply being punished for having failed the ninth grade." *Id.* The Court concluded that such blanket application of otherwise legitimate rule could not be condoned and that the "purposes of the Commission's rules—to prevent red-shirting—may be accomplished in a more reasonable and less restrictive way." *Id.* at 161, 386 S.E.2d at 659.

■ In *State ex rel. Lambert by Lambert v. West Virginia State Board of Education,* 191 W.Va. 700, 447 S.E.2d 901 (1994), this Court addressed the issue of the modifications to be effectuated in the education setting where a student required extra assistance to allow her to fully participate. In syllabus point one of *Lambert,* this Court explained:

> in school for a year, keep them off the field, and have them use that year to gain bulk, strength, and maturity. When the student is led back to the field after a year, he makes a more impressive show for coaches, parents, fans, and college recruiters. Red-shirting subverts the student's normal academic progress to unworthy and improper ends. It is a corrupt and mean-spirited practice.
> *Hamilton,* 182 W.Va. at 160, 386 S.E.2d at 658.

---

**6.** Red-shirting is a practice of delaying a student's academic pace and postponing his initial participation in athletics to permit him to gain physical and athletic maturity before beginning the period of eligibility for competitive athletics. It is the cynical and pernicious manipulation of a student's academic standing for the derivative athletic glory of adults—over-zealous coaches and parents. The scheme is to take young athletes of star quality, hold them back

When a student has a disability requiring special assistance or services to enable participation in school-sanctioned extracurricular activities, a request for assistance or services can be made on the student's behalf to any school official familiar with the student's needs. That school official then has the responsibility to inform the county board of education's director of special education of the request so that appropriate action can be taken.

*See also* Syl. Pt. 3, *Board of Educ. v. West Virginia Human Rights Com'n*, 182 W.Va. 41, 385 S.E.2d 637 (1989) ("Hearing-impaired children, between five and twenty-three years of age, are handicapped for purposes of *W.Va.Code*, 18–20–1, as amended. Therefore, when a county board of education fails to provide an appropriate education for a hearing-impaired child between five and twenty-three years of age, such failure constitutes unlawful discrimination based upon handicap and is violative of *W.Va.Code*, 5–11–9(f), as amended").

In one of the seminal federal cases dealing precisely with the issue raised in the present case, the Eighth Circuit Court of Appeals in *Pottgen* applied Title II statutes and ruled that a student who had repeated two grades in elementary school due to learning disabilities would not be granted an injunction against enforcement of an age nineteen rule. The majority in *Pottgen* reasoned that prior to deciding whether a student was a "qualified individual" under the ADA, it must first determine whether the age limit was an essential eligibility requirement by reviewing the importance of this requirement in the interscholastic baseball program. 40 F.3d at 931. The *Pottgen* court found that the age limit was an essential eligibility requirement which could not be waived for the disabled student. The age limit served to (1) reduce any competitive advantage to teams with older athletes; (2) protect younger students from injury; (3) discourage students from delaying their education to enhance athletic performance; and (4) prevent coaches from red-shirting students. *Id.* at 929. The *Pott-*

*gen* court found that the only possible accommodation, waiver of the age limit, would be unreasonable and would constitute a fundamental alteration in the baseball program, a result not required by the ADA. *Id.* at 929–30. Since no "reasonable" accommodation could be made, plaintiff was not "otherwise qualified." *Id.*

The dissent in *Pottgen* undertook a different line of reasoning, contending that the primary question to be answered is whether an age limit is essential to a program. The dissent quoted the Code of Federal Regulations as follows:

A public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity.

40 F.3d at 932 (Arnold, C.J., dissenting), *quoting* 28 C.F.R. § 35.130(b)(7) (1994). While the majority in *Pottgen* found that such individualized inquiry should not be made until the general essentiality determination was made, the dissent reasoned that the inverse was true.[7] The dissent reasoned that "the courts are obligated by statute to look at plaintiffs as individuals before they decide whether someone can meet the essential requirements of an eligibility rule like the one before us in the present case." *Id.* at 931. "[I]f a rule can be modified without doing violence to its essential purposes, as the District Court has found in the present case, I do not believe that it can be 'essential' to the nature of the program or activity to refuse to modify the rule." *Id.* at 932–33. Further, the dissent concluded that "[i]f an eligibility requirement can be reasonably modified to make someone eligible, that person is a qualified individual." *Id.* at 933.

The reasoning of the majority in *Pottgen* was employed one year later in *Sandison.* In that case, the Sixth Circuit held that nineteen-year-old high school students, de-

7. Chief Judge Arnold explained as follows in the *Pottgen* dissent: "I agree with the Court that if a requirement is 'essential' to a program or activity, a waiver or modification of that requirement would not be 'reasonable' within the meaning of the statute. But how do we determine what is 'essential'?" 40 F.3d at 932 (Arnold, C. J., dissenting).

layed in finishing high school due to learning disabilities, had not been excluded from participation *solely* by reason of disability, within the meaning of federal anti-discrimination legislation. 64 F.3d at 1034. The *Sandison* court held that the age rule was neutral with respect to disability and had been neutrally applied by association. It further reasoned that waiving the age rule would fundamentally alter the nature of track and field events by allowing older students to participate. *Id.* at 1035; *see also McPherson v. Michigan High School Athletic Ass'n, Inc.,* 119 F.3d 453 (6th Cir.1997) (holding that eight-semester eligibility rule did not violate ADA); *Rhodes v. Ohio High School Athletic Ass'n.,* 939 F.Supp. 584 (N.D.Ohio 1996) (holding that eight-semester eligibility rule excluded students on the basis of age, not disability); *Reaves v. Mills,* 904 F.Supp. 120 (W.D.N.Y. 1995) (finding no discrimination in refusal to waive age nineteen rule); *Cavallaro ex rel. Cavallaro v. Ambach,* 575 F.Supp. 171 (W.D.N.Y.1983) (upholding refusal to waive age nineteen rule in wrestling).

In *Johnson v. Florida High School Activities Ass'n, Inc.,* 899 F.Supp. 579 (M.D.Fla. 1995) *judgment vacated on other grounds,* 102 F.3d 1172 (11th Cir.1997), the Florida District Court considered whether a disabled student could be excluded from participation in sports because he was not age eligible. 899 F.Supp. at 582. Rather than a blanket finding that the requirement was essential and that any waiver would be unreasonable, the *Johnson* court required an individualized analysis of the requirement, its underlying purposes, and the manner in which allowing participation would affect those purposes. *Id.* at 585. The *Johnson* court embraced the minority opinion expressed in *Pottgen,* and consequently concluded that where the particular student in question was not a safety hazard, was an average player, and had less experience than other players, waiving the age rule would not fundamentally alter the nature of the program. *Johnson,* 899 F.Supp. at 586; *see also University Interscholastic League v. Buchanan,* 848 S.W.2d 298 (Tex.Ct.App.1993) (waiver of age eligibility rule was reasonable accommodation); *Booth v. Univ. Interscholastic League,* 1990 WL 484414 (W.D.Tex.1990) (waiver of age

eligibility rule was reasonable accommodation).

In *Dennin v. Connecticut Interscholastic Athletic Conference, Inc.,* 913 F.Supp. 663 (D.Conn.), *judgment vacated on other grounds,* 94 F.3d 96 (2d Cir.1996), the court determined that the student would be deemed "otherwise qualified" if with "reasonable accommodation" he could meet the necessary requirements of the program at issue. 913 F.Supp. at 669. The athletic conference had submitted the literalists' argument that to be "otherwise qualified," the student must meet the age requirement. The court found that such assertion essentially begged the question, reasoning that if the individual does not meet an essential requirement due to the effects of his disability, it remains to be determined whether a reasonable accommodation, including a modification of the age rule, would enable the individual to become "otherwise qualified." *Id.* at 668.

The *Dennin* court conceded that an accommodation cannot be considered "reasonable" if it imposes "undue financial or administrative burdens" or "fundamentally alters the nature of the program." *Id., quoting Pottgen,* 40 F.3d at 929. "Thus, the question presented is whether waiver of the age requirement fundamentally alters the program or imposes undue burdens." *Id.*

> The reasoning of *Johnson* and the dissent in *Pottgen* is persuasive. It would be an anathema to the goals of the Rehabilitation Act to decline to require an individualized analysis of the purposes behind the age requirement as applied to Dennin. Failure to perform such an analysis would exalt the rule itself without regard for the essential purposes behind the rule.

*Id.* at 668–69. The *Dennin* court also addressed the burden imposed upon the defendant in requiring individual consideration of each waiver application. The court explained that the athletic conference was "not required to grant waivers to *all* students who fail to meet the age requirement. However, it would be required under the Rehabilitation Act to give the disabled individual consider-

ation, including to Dennin, as he falls within the Act."[8] *Id.* at 669.

In addressing issues of whether the student was being discriminated against on the basis of his disability, the court stated that "the *sole* reason that Dennin is in school at nineteen is due to his disability. But for his disability, his fourth year of athletic participation ... would not have been when he had become nineteen but at age eighteen." 913 F.Supp. at 669. "Defendant's argument would result in the rule insulating itself from scrutiny." *Id., quoting Booth,* 1990 WL 484414 at *3 ("[t]o accept such an analysis would mean that any student who fails to meet [defendant's] requirement as a result of a past handicap is not 'otherwise qualified,' and therefore is not protected by the Rehabilitation Act").

The *Dennin* court also recognized that "[a]lthough there generally is no constitutional right to participate in interscholastic sports, it has been held that inclusion of such activity in an IEP transforms it into a federally protected right." *Id.* at 671, *citing T.H. v. Montana High School Ass'n,* 1992 WL 672982 at *4 (D.Mont.1992); *see also M.H., Jr. v. Montana High School Ass'n,* 280 Mont.

123, 929 P.2d 239 (1996) (holding that under the Individuals with Disabilities Education Act, participation in sports over the age limit must be permitted where such participation is required by a student's individualized education program (IEP)).[9]

The minority view of *Pottgen* was also implemented by the Seventh Circuit Court of Appeals in *Washington v. Indiana High Sch. Athletic Ass'n,* 181 F.3d 840 (7th Cir.1999), *cert. denied,* 528 U.S. 1046, 120 S.Ct. 579, 145 L.Ed.2d 482 (1999). In that case, a learning disabled student brought an action alleging that athletic association's failure to grant a waiver of its eight-semester eligibility rule violated the ADA. The Seventh Circuit Court of Appeals addressed the issue of continued participation by students after eight semesters of high school and concluded as follows: "In short, we believe that the analysis of Chief Judge Richard Arnold in dissent in the *Pottgen* case ... is more compatible with the congressional intent." *Id.* at 850.

The *Washington* court referenced the United States Supreme Court's decision in *School Board of Nassau County v. Arline,* 480 U.S. 273, 107 S.Ct. 1123, 94 L.Ed.2d 307 (1987),[10] and explained:

---

**8.** The *Dennin* court reasoned as follows:

> In Dennin's case, such consideration would be relatively simple. In some cases it would be more complex, depending on the sport in question, the size, agility, strength and endurance of the individual, and whether the quality of his/her athletic capacity/capability is enhanced by his/her age beyond eighteen. That it may prove difficult in some cases does not substantiate the claim that it would be unduly burdensome or destructive of the purpose of the rule.

913 F.Supp. at 669.

**9.** Mr. Baisden's IEP did not contain a requirement that he participate in interscholastic sports. Accordingly, because this case did not present the specific question dealt with in *M.H., Jr. v. Montana High School Ass'n,* this opinion does not address that issue.

**10.** The appendix to the Title II regulations also refers to the United States Supreme Court decision in *Arline,* noting as follows:

> In *School Board of Nassau County v. Arline,* 480 U.S. 273, 107 S.Ct. 1123, 94 L.Ed.2d 307 (1987), the Supreme Court recognized that there is a need to balance the interests of people with disabilities against legitimate concerns for public safety. Although persons with

disabilities are generally entitled to the protection of this part, a person who poses a significant risk to others will not be 'qualified,' if reasonable modifications to the public entity's policies, practices, or procedures will not eliminate that risk.

> The *determination that a person poses a direct threat to the health or safety of others* may not be based on generalizations or stereotypes about the effects of a particular disability. It must be based on an individualized assessment, based on reasonable judgment that relies on current medical evidence or on the best available objective evidence, to determine: the nature, duration, and severity of the risk; the probability that the potential injury will actually occur; and whether reasonable modifications of policies, practices, or procedures will mitigate the risk. This is the test established by the Supreme Court in *Arline.* Such an inquiry is essential if the law is to achieve its goal of protecting disabled individuals from discrimination based on prejudice, stereotypes, or unfounded fear, while giving appropriate weight to legitimate concerns, such as the need to avoid exposing others to significant health and safety risks.

28 C.F.R. Pt.35, App. A, 520 (Preamble to Regulation on Nondiscrimination on the Basis of Disability in State and Local Government Services).

We think that the individualized approach is consistent with the protections intended by the ADA. The entire point of *Arline's* statement that a person is otherwise qualified if he is able to participate with the aid of reasonable accommodations is that some exceptions ought to be made to general requirements to allow opportunities to individuals with disabilities. To require a focus on the general purposes behind a rule without considering the effect an exception for a disabled individual would have on those purposes would negate the reason for requiring reasonable exceptions.

181 F.3d at 851. The *Washington* court refused to "accept the suggestion that liability under Title II of the Discrimination Act must be premised on an intent to discriminate on the basis of disability." [11] *Id.* at 846.

The *Washington* court also relied upon the United States Supreme Court's interpretation of anti-discrimination legislation in *Alexander v. Choate*, 469 U.S. 287, 105 S.Ct. 712, 83 L.Ed.2d 661 (1985). The *Alexander* Court had stated as follows: "Discrimination against the handicapped was perceived by Congress to be most often the product, not of invidious animus, but rather of thoughtlessness and indifference—of benign neglect." 469 U.S. at 295, 105 S.Ct. 712. The *Alexander* Court also recognized that "much of the conduct that Congress sought to alter in passing the Rehabilitation Act would be difficult if not impossible to reach were the Act construed to proscribe only conduct fueled by a discriminatory intent." *Id.* at 296–97, 105 S.Ct. 712.

Recognizing the divergence of opinion throughout various jurisdictions dealing with this issue, the *Washington* court concluded that the minority opinion in Pottgen most closely paralleled congressional intent and determined "that the better view is to ask whether waiver of the rule in the particular case at hand would be so at odds with the purposes behind the rule that it would be a fundamental and unreasonable change." 181 F.3d at 850.[12]

In *Cruz v. Pennsylvania,* 157 F.Supp.2d 485 (E.D.Pa.2001), the Pennsylvania District Court encountered an action brought by a disabled student under the Individuals with Disabilities Education Act, § 615, as amended, 20 U.S.C.A. § 1415. The *Cruz* court found that modification of an age rule to permit a student to participate in sports would "not fundamentally alter the nature of the competition." *Id.* at 499. As in the case presently before this Court, the contention was made that the age rule was essential in *Cruz* to protect athletes from unfairness and to maintain uniformity of standards with regard to the ages of the participants. The court reasoned: "It now seems clear that a rule is essential to a program unless it can be shown that the waiver of it would not fundamentally alter the nature of the program. This determination must be made on an individual basis." *Id.* The *Cruz* court also considered the burden to be placed on the athletic administrators in examining individual requests for waivers. The court noted that the administrators would not be overly burdened by such determinations, particularly noting that if the student seeking the waiver had an IEP requiring participation in interscholastic sports, no weighing of relevant considerations would be required. *Id.* at 500.

---

**11.** "Simply stated, Mr. Washington claims that his disability caused him to drop out of school; otherwise he would have been able to play high school basketball. In the absence of his disability, the passage of time would not have made him ineligible." 181 F.3d at 849.

**12.** The WVSSAC, in the present case, maintains that the import of the *Washington* reasoning should be minimized because *Washington* based its conclusions upon a challenge to the "eight semester" rule rather than the age rule and concluded that the student's participation would be barred by the age rule. However, the opinion in

*Washington* specifically states that "[n]o challenge is made to that [age] rule in this lawsuit." *Id.* at 843. "Rather, the focus is exclusively on the eight semester rule; it is challenged on the ground that failure to grant a waiver of the eight semester rule in this case violates Title II of the Americans with Disabilities Act. . . ." *Id.* Consequently, the fact that the *Washington* court did not address the discriminatory effect of the age rule does not diminish the influence of the reasoning contained in the opinion; it simply reflects the fact that the age rule was not challenged by the parties in *Washington*.

## IV. Conclusion

Based upon our evaluation of the strategies employed by other jurisdictions encountering the situation, as well as the tenor of this Court's prior holdings with regard to discrimination issues, we conclude that because age alone does not determine one's qualifications for interscholastic sports competition and discrimination against exceptional students should be avoided where a reasonable accommodation of disabilities may be made, the otherwise salutary age nineteen rule, set forth in West Virginia Code of State Regulations § 127–2–4.1, may be waived. Waiver should be granted where a student's disabilities have delayed his progression through the education process and it is shown that the participation of the student requesting a waiver will not materially alter the quality of the interscholastic sports competition involved. Applications for waivers should be considered by the West Virginia Secondary Schools Activities Commission on a case by case basis and granted or refused after a thorough evaluation of all relevant factors, including, but not necessarily limited to the age of the student; the athletic experience of the student; the degree to which the student presents a risk of harm to other competitors due to his or her strength, size, or speed; the nature of the sport;[13] the degree to which fair competition among high school teams would be impacted by the student's participation; and whether the student's individualized education plan, if any, contains a provision requiring sports participation. We believe that this individualized approach is consistent with the goals of the West Virginia Human Rights Act and the applicable federal guidelines.[14]

In applying those principles to the facts of the present case, we must reverse the determination of the lower court. While we decide, through this opinion, that individualized assessments are required in cases of this nature and that reasonable accommodations may be made through waiver of the age nineteen rule under certain circumstances, we do not believe that the facts of this case justify waiver as an accommodation. Mr. Baisden turned nineteen on July 27, 2001. He is six feet four inches tall and weighs 280 pounds. He runs the forty-yard-dash in 5.3 seconds. His participation in high school football would permit him to compete in this contact sport against students approximately five years younger. The safety of younger, smaller, more inexperienced students would be unreasonably compromised. In our view, this would fundamentally alter the structure of the interscholastic athletic program, a result which is not required by reasonable accommodation standards in anti-discrimination law. Consequently, we reverse the determination of the lower court.[15]

Reversed.

---

13. For example, a student requesting a waiver of the age rule to play football would obviously subject himself to a different analysis than a student wishing to compete on the swimming team.

14. *See* Colleen M. Evale, *Sandison v. Michigan High School Athletic Ass'n: The Sixth Circuit Sets up Age Restrictions as Insurmountable Hurdles for Learning–Disabled High School Student–Athletes,* 5 Sports Law J. 109, 134 (1998); Adam Milani, *Can I Play? The Dilemma of the Disabled Athlete in Interscholastic Sports,* 49 Ala. L.Rev. 817, 859–60 (1998); Mark Freitas, *Applying the Rehabilitation Act and the Americans with Disabilities Act to Student Athletes,* 5 Sports Law J. 139, 162 (1998); Katie M. Burroughs, *Learning*

*Disabled Student Athletes: A Sporting Chance Under the ADA?,* 14 J. Contemp. Health L. and Pol'y 57, 78 (1997); John Wolohan, *Are Age Restrictions A Necessary Requirement for Participation in Interscholastic Athletic Programs?,* 66 U. Mo. Kansas City L.Rev. 345, 355 (1997); Gary Lawton, *AIDS, Astrology and Arline: Towards a Causal Interpretation of Section 504,* 17 Hofstra L.Rev. 237, 259–65 (1989).

15. Our decision has no retroactive effect upon Mr. Baisden's high school football career, and we have been assured through oral argument that the WVSSAC has absolutely no intention of using the expressions of this opinion to threaten forfeiture against Mr. Baisden's high school football team due to Mr. Baisden's participation.